## AMERICAN HARROW CO. v. SHAFFER et al.

(Circuit Court, W. D. Virginia. January 26, 1895.)

1. TAXATION—EQUALITY—VIRGINIA LICENSE TAX.

   The statute of Virginia (Acts 1889–90, §§ 108, 109) imposing a license tax upon a person who sells or offers for sale manufactured implements or machines, by retail, unless he is the owner thereof, duly licensed as a merchant, or takes orders therefor on commission; such tax being $30 for the county in which the license is taken out, and $10 for each additional county in which goods are sold.—any person who pays an annual tax to the state of $30, upon capital invested in the manufacture of such articles, being permitted to sell the same, by himself or by agents, without license tax,—does not violate article 10, § 1, of the constitution of Virginia, providing that taxation shall be equal and uniform.

2. SAME—INTERSTATE COMMERCE.

   Nor is such statute in conflict with the constitution of the United States, as creating a regulation of commerce between the states, or restricting the privileges of the citizens of the several states.

3. INTERSTATE COMMERCE—SALE BY SAMPLE.

   Where a corporation of one state sends its manufactured goods into another state, in car-load lots, and its agents take the same, in small quantities, from a central storehouse, and carry them about the country, selling and delivering them directly to purchasers, such agents are not engaged in selling goods by sample, nor in interstate commerce.

This was a suit by the American Harrow Company against Joseph B. Shaffer, commissioner of the revenue for Wythe county, Va., and others, to restrain the defendants from collecting penalties for the nonpayment of taxes.

Blair & Blair, for complainant.

R. Taylor Scott, Atty. Gen. for Va., for defendants.

PAUL, District Judge. This is a motion to dissolve an injunction awarded on the 3d day of August, 1892, on behalf of the complainant against Joseph B. Shaffer, commissioner of the revenue for Wythe county, Va.; G. W. Repass, treasurer; J. L. Gleaves, commonwealth's attorney; and J. R. Harkrader, sheriff of said county,—restraining said officers from proceeding in the circuit court of Wythe county to collect the statutory penalty for nonpayment of certain license taxes alleged to be due the commonwealth of Virginia by the complainant and its agents. The tax complained of was assessed under the tax law of Virginia (Acts 1889–90, p. 240, §§ 108, 109), which provides as follows:

"Sec. 108. Any person who shall sell or offer for sale manufactured implements, or machines by retail, other than sewing machines, unless he be the owner thereof and duly licensed as a merchant, or takes orders therefor on commission or otherwise, shall be deemed to be an agent for the sale of manufactured articles, and shall not act as such without taking out a license therefor. No such person shall, under his license as such, sell or offer to sell such articles through the agency of another, but a separate license shall be required for any agent or employé who may sell or offer to sell such articles for another. For any violation of this section the person offending shall pay a fine of not less than fifty dollars nor more than one hundred dollars for each offense.

"Sec. 109. Every agent for the sale of manufactured implements or machines, other than sewing machines, shall pay for the privilege of transact-

ing such business the sum of thirty dollars, and this shall give to any party licensed under this section the right to sell the same within the county or corporation in which he shall take out his license. And if he shall sell or offer to sell the same in any other of the counties or corporations of the state, he shall pay an additional sum of ten dollars in each of the counties or corporations where he may sell or offer to sell the same: provided that any person who shall pay an annual tax to the commonwealth upon capital actually employed by him in the manufacture of these articles or machines mentioned in this section of not less than thirty dollars per annum, may without anything further being paid for the privilege by himself or his agents, employ agents to sell said articles or machines manufactured by him in any of the counties or corporations of the state; and the certificate of the treasurer of the county or corporation in which said tax shall be paid by such person on the capital so employed by him in the manufacture of such articles or machines shall be evidence of the fact and the amount of tax so paid by him to the state thereon."

The bill alleges that the complainant is a corporation organized under the laws of the state of Michigan, and a citizen of that state, engaged in the business of selling implements and machines manufactured by it in the state of Michigan, by retail and otherwise, by its agents; that it manufactures a combined harrow, cultivator, and seeder; that on the 16th day of July, 1892, it sent its agents into Wythe county, to sell said implements by sample, and to deliver the same; that while its agents were so engaged the tax complained of was assessed against them; that its mode of doing business was as follows:

"Your orator, by its agents, travels through the country with its wagons containing samples of its implements, and its agents solicit orders for the sale of the same, and when said orders are given and said orders are approved by your orator, or its general manager here [Wythe county], then the order is filled, and the implements delivered to the purchaser, who either pays cash for it or executes his note for the same."

The defendants answer the bill under oath, and in their answer say:

"Respondents deny all, each, and every allegation of the bill touching complainant's business in the county of Wythe, and the manner in which said business is and was carried on and conducted."

Further answering, these respondents say the—

"American Harrow Company brought and had shipped to the county of Wythe manufactured articles, such as harrows, etc., commingled said articles with the property of the county, stored them in houses, depots, and other places, and then proceeded to sell and offer for sale said articles without having first obtained the license prescribed by law for the business in the manner and form set out in the revenue laws enacted by the general assembly of Virginia."

And, in consequence of the complainant's agents failing to obtain such license, actions were instituted in the circuit court of Wythe county.

The defendants Gleaves and Shaffer file a statement of facts which counsel for complainant agree may be read and used as affidavits, without notice, and with the same effect as though in the form of depositions. The statement is as follows:

"The following statement of facts is submitted by counsel for defendants as the facts in the above suit: In the year 1892 there came to Wythe county, Virginia, eight or ten men, bringing with them eight pairs of horses and

wagons. That in a few days afterwards there arrived at the Wytheville depot one or more car loads of American harrows. That these harrows were taken from the cars by these eight or more men, who represented themselves to be agents of the American Harrow Company, and stored in a building in said town. That they then loaded their eight wagons with two harrows each, and proceeded to sell and offer to sell the same throughout the said county of Wythe, and, when a sale was made, delivering one of the harrows upon the wagons. That when a license tax was demanded by Jos. B. Shaffer, commissioner of the revenue, they declined to pay the same, saying they were exempt from said tax by the interstate commerce law, the said harrows being manufactured in the state of Michigan. That afterwards, when told by the said commissioner of the revenue that unless the tax, as prescribed by section 109, Acts Assem. 1889-90, regulating the amount of tax to be paid by agents for the sale of manufactured implements, was paid, that he would be compelled to collect the same by law, said agents declined to pay the said tax, but expressed a willingness to pay the license tax prescribed by section 28 of same act, imposing a tax upon merchants, which said tax the commissioner was unwilling to accept."

The complainant has taken no testimony to sustain the bill. It filed the ex parte affidavits of some of its agents, which the court cannot consider as evidence; being taken without notice to the defendants, and defendants not consenting that they may be read as evidence. The cause, as presented to the court, stands upon the bill and exhibits filed therewith, showing the pendency of the proceedings in the state court, the answer of the defendants, under oath, and the statement of facts by the defendants Gleaves and Shaffer, which, by consent of complainant's counsel, is to be read with the same effect as if it were in the form of depositions of said defendants.

The first ground relied on by counsel for complainant to sustain the injunction in this case is that the license tax law (section 109, above quoted) is unconstitutional, in that it discriminates in favor of home manufactures of implements and machines, and against the manufacturers of other states; that the discrimination consists in this: that section 109 provides that any person who shall pay an annual tax to the commonwealth upon capital actually employed by him in the manufacture of articles or machines mentioned in said section, of not less than $30 per annum, may, without anything further being paid for the privilege by himself or his agents, employ agents to sell said articles or machines manufactured by him in any of the counties or corporations of the state. But it is contended that additional licenses are imposed upon persons who sell or offer to sell these goods, who do not pay to the state of Virginia tax to the amount of $30 upon the capital invested in manufactures; such persons being required to pay a specific license tax of $30, which gives them only the right to sell within one county or corporation in which the license is taken out, and if they wish to sell or offer for sale in other counties or corporations of the state, and by other agents, they are required by said section 109 to pay $10 for each additional county and for each additional agent, and that this is a discrimination against manufacturers of other states. The provision of the constitution of the state of Virginia that is invoked to nullify the act in question is section 1 of article 10, which provides that:

"Taxation, except as hereinafter prescribed, whether imposed by the state, or county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value."

Section 4 of article 10 provides, "the general assembly may levy a tax upon incomes," and upon certain licenses, among others, commission merchants, persons selling by sample, brokers, pawnbrokers, and all other businesses which cannot be reached by the ad valorem system. It further provides, "The capital invested in all business operations shall be assessed and taxed as other property."

The argument of counsel is based on the ground that the tax provided for in section 109 is not equal and uniform; that it favors the manufacturer who sells by agent, and who has sufficient capital invested in his business to require him to pay $30 taxes thereon to the commonwealth, over one who sells the same manufactured articles, by himself or agents, who has not such an amount of capital invested in the manufacturing business in this state. It is settled by unquestioned authorities that the terms "equal and uniform" apply only to a direct tax on property, and that the clause by which equality and uniformity are prescribed does not limit the power of the legislature as to the subjects of taxation, but is only intended to prevent an arbitrary taxation of property according to kind or quality, without regard to value. Com. v. Moore, 25 Grat. 951; Eyre v. Jacob, 14 Grat. 422; Cooley, Const. Lim. (5th Ed.) 616, 617; Sedg. St. & Const. Law (2d Ed.) 504. The question under discussion, viz. the power of the legislature to lay a license tax, on other than an ad valorem basis, was before the supreme court of the state of Virginia in Com. v. Moore, 25 Grat. 962, and was held to be constitutional. As to the discrimination complained of, much might be said. if it were within the province of the court to do so, in defense of the statute, and of the wisdom and justice of the policy pursued by the legislature in its enactment. But the justice or injustice of the act is a question with which the court can have no concern. It is a matter that the constitution has confided to the judgment and discretion of the legislature. "The rule of law upon this subject seems to be that, except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operates according to natural justice, or not, in any particular case. The judiciary can only arrest the execution of a statute when it conflicts with the constitution." Cooley, Const. Lim. 201. "The presumption always is that the legislature has judged correctly of its constitutional powers, and the contrary must be clearly demonstrated before a co-ordinate branch of the government can be called upon to interfere between the people and their immediate representatives. The decisions of all the courts, state and federal, speak a uniform language on this subject." "We declare an act of the general assembly void only when such an act clearly and plainly violates the constitution, and in such manner as to leave no doubt or hesitation on our minds."

Com. v. Moore, 25 Grat. 953; Eyre v. Jacob, 14 Grat. 422. The act under which the taxes complained of were assessed violates no provision of the constitution of Virginia, either express or implied, and contains no provision discriminating against the citizens or the manufactured articles of other states.

Counsel for complainant claim, in argument, that the statute in question has been declared to be in conflict with the constitution of the United States in the case of Webber v. Virginia, 103 U. S. 344. But an examination of that case shows that the statute there decided to be unconstitutional imposed a tax on agents for the sale of the manufactured articles of other states and territories different from that assessed upon agents for the sale of articles manufactured in this state. That statute (Revenue Law 1875, § 45), decided to be unconstitutional, contained this provision:

"That any person who shall sell or offer for sale the manufactured articles of other states or territories, unless he be the owner thereof, and taxed as a merchant, or takes orders therefor on commission, or otherwise, shall be deemed an agent for the sale of such articles, and shall not act as such without a license therefor."

The forty-sixth section of the same act fixed the license tax for the sale of such articles at a rate different from that fixed for the sale of articles manufactured in this state. "Here," says the court, "is a clear discrimination in favor of home manufacturers, and against the manufacturers of other states." The tax was made to depend upon the foreign character of the articles sold,—that is, upon their having been manufactured without the state,—and it was, to that extent, a regulation of commerce in the articles between the states. 103 U. S. 350. But this discriminating provision is not embodied in the tax law we are now considering, nor is it found in any revenue statute passed by the Virginia legislature since the decision in Webber v. Virginia was rendered.

A number of decisions are relied upon by counsel for complainant to show that the Virginia statute is obnoxious to clause 3, § 8, art. 1, of the constitution of the United States, commonly known as the "Commerce Clause," giving to congress the power to regulate commerce among the several states. A careful examination of the cases cited shows no provision in the statute which is inhibited by this declaration of the federal constitution. The case first quoted by counsel is Ward v. Maryland, 12 Wall. 418. In this case a Maryland statute fixing taxes was held void because it discriminated in favor of residents and against nonresidents of the state, and was in violation of the provision of the constitution of the United States which provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states. Const. U. S. art. 4, § 2, cl. 1. Another case quoted is Welton v. Missouri, 91 U. S. 275. A Missouri statute required the payment of license tax from persons who dealt in the sale of goods, wares, and merchandise which were not the growth, product, or manufacture of the state, by going from place to place to sell the same in the state, and required no such license tax from persons selling in a similar way goods which were the growth, product, and

manufacture of the state. Walling v. Michigan, 116 U. S. 446, 6 Sup. Ct. 454, is another case in which a statute imposed a tax on nonresidents, or their representatives, for selling liquor in the state, which discriminated in favor of citizens of the state of Michigan. It is clear that these decisions cannot be relied upon to show that the Virginia license law is unconstitutional because it discriminates in favor of residents, and against nonresidents, of the state. The statute makes no such discrimination. It requires the same license tax of an agent who engages in the business of selling manufactured implements or machines, whether he be a citizen of Virginia or of another state. The cases above cited establish what enactments in license tax laws are discriminations in favor of the citizens of the state enacting such laws, and against the citizens of sister states, and are therefore invalid, as impinging upon the provision of the constitution of the United States regulating commerce among the states. The decisions of the supreme court of the United States are equally clear and conclusive as to certain provisions in state tax laws which are not in conflict with the commercial clause of the United States constitution. Machine Co. v. Gage, 100 U. S. 676, was a case in which the plaintiff was a corporation of the state of Connecticut. It manufactured sewing machines at Bridgeport, in that state, and had an agency at Nashville, in the state of Tennessee. From the latter place an agent was sent into Sumpter county, in that state, to sell machines there. A tax was demanded from him for a peddler's license to make such sales. He denied the validity of the law under which the tax was claimed. The Tennessee law fixed a tax upon peddlers of sewing machines. The sewing machines were manufactured in Connecticut. The supreme court of Tennessee held that the law taxing the peddler of such machines levied the tax on all peddlers of sewing machines, without regard to the place of manufacture. The supreme court of the United States sustained the decision, the court saying:

"In all cases of this class to which the one before us belongs, it is a test question whether there is any discrimination in favor of the state, or of the citizens of the state, which enacted the law. Wherever there is such discrimination, it is fatal. Other considerations may lead to the same result." "In the case before us the statute in question, as construed by the supreme court of the state, makes no such discrimination. It applies alike to sewing machines manufactured in this state and out of it. The exaction is not an unusual or an unreasonable one. The state, putting all such machines upon the same footing with respect to the tax complained of, has an unquestionable right to impose the burden."

It is sought by counsel for complainant to bring this case within the scope of the decision of the United States supreme court in Robbins v. Shelby Co. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592. The statute of Tennessee imposed a tax on all drummers, and all persons not having a regular licensed house of business in Shelby taxing district. The facts, as stated in that case, were: Robbins was a citizen and resident of Cincinnati, Ohio, and was engaged in the business of drumming in the taxing district of Shelby county, Tenn., i. e. soliciting trade, by the use of samples, for the house or firm

for which he worked as a drummer; said firm doing business in Cincinnati, where all the members thereof lived. The question was as to the constitutionality of the act which imposed the tax on drummers, and the court held that it was not competent for a state to levy a tax, or impose any other restriction, upon the citizens or inhabitants of other states, for selling, or seeking to sell, their goods in such state, before they were introduced therein. We have numerous decisions in the federal courts to the same effect. But the facts in the case now before this court do not bring it in line with that class of cases. The evidence in this case shows these facts: The complainant in July, 1892, sent its agents (eight or ten of them) into Wythe county, with eight teams and wagons. In a few days afterwards there arrived at 'the Wytheville depot, in said county, two car loads of implements known as the "American Harrow." That these harrows were taken from the cars by these eight or more men, who represented themselves to be agents of the American Harrow Company, and stored in a building in the said town of Wytheville. That these men then loaded their eight wagons with two harrows each, and proceeded to sell and offer to sell the same throughout the county of Wythe, and when a sale was made of a harrow they delivered to the purchaser one of the harrows which they had on their wagons. That when a license tax was demanded of them they declined to pay the same, saying they were exempt from said tax by the interstate commerce law, the said harrows being manufactured in the state of Michigan. That afterwards, when told by the commissioner of the revenue that unless the tax was paid as prescribed by section 109 of the revenue law of the Acts of Assembly of 1889–90, fixing the amount of tax to be paid by agents for the sale of manufactured implements, he would be compelled to collect the same by law, they still declined to pay the same, but expressed a willingness to pay the license tax prescribed by section 28 of said revenue law, imposing a tax upon merchants. On this statement of facts, these men do not come within the class of mercantile agents styled "drummers" or sample merchants selling, on orders, goods in another state, to be thereafter forwarded and delivered to the purchaser in the state where sold. The facts place them on a footing with citizens of the state selling goods that are within the state at the time of sale. In Webber's Case, 33 Grat. 898, the court says:

"And while it is conceded to be no easy task precisely to define when the privilege of the sample merchant begins, or when it terminates, it is very clear that a person, whether he be owner or agent, who has a place of business in a county or town, and there sells and delivers the articles at the time of sale, or a person who carries his goods from place to place, and sells and delivers the articles at the time of sale, is not selling by sample, card, or description. Such a person may be a retail merchant or a peddler, but he is not a sample merchant."

In the case cited by counsel for complainant (Robbins v. Shelby Co. Taxing Dist., 120 U. S. 498, 7 Sup. Ct. 592), the court held that the negotiation of sales of goods which are in another state, for the purpose of introducing them into the state where the negotiation is made, is interstate commerce. In the same case the court said:

"As soon as the goods are in the state, and become a part of its general mass of property, they will become liable to be taxed in the same manner as other property of similar character."

The court held the same doctrine in Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091. In Machine Co. v. Gage, 100 U. S. 676, the court said:

"Where goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property, and amenable to its laws, provided that no discrimination be made against them, as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way, as other goods are."

Applying the principles so distinctly stated in these decisions to the facts in this case, no other conclusion can be reached than that the agents of the complainant were not engaged in selling harrows by sample, taking orders therefor, the orders to be sent to their principal, in the state of Michigan, and the harrows so sold on orders forwarded to the purchasers. Had this been the course pursued by these agents, no question could have arisen as to their liability to pay the license tax demanded of them. They would clearly have been exempt from such tax. But when the plaintiff shipped its harrows by car loads from the state of Michigan into the state of Virginia, deposited these goods in a warehouse in the town of Wytheville, and then, through its agents, loaded them on wagons, sent them through the country, selling and delivering them to purchasers from the wagons, it cannot be claimed that they were engaged in interstate commerce. These goods were completely severed from the general property of the state of Michigan, were sent to the state of Virginia for sale, were commingled with the general property of the latter state, and subject to her laws. The plaintiff's agents, in selling these goods in the manner they did, were as clearly amenable to a license tax as if they had been engaged, as agents, in selling implements and machinery manufactured in the state of Virginia. Having refused to pay the license tax, they subjected themselves to the penalty fixed by the statute, to recover which the suits were brought in the state court, the prosecution of which this court is asked to perpetually enjoin.

The contention that the Virginia statute violates article 4, § 2, of the constitution of the United States, which declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states," cannot be sustained. The statute makes no discrimination in favor of citizens of Virginia, and against the citizens of other states. It does not violate the privileges and immunities of the complainant and its agents, as citizens of another state engaged in business pursuits in this state, but imposes upon them the same burden of taxation, and none other, that it places upon the citizens of Virginia.

Equally untenable is the proposition that the Virginia statute is in conflict with the fourteenth amendment, § 1, of the federal constitution, which provides that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States nor deny to any person within its jurisdiction the

equal protection of the laws." In view of what the court has already said on other points presented in the case, no discussion of this question is necessary. The injunction will be dissolved, with costs to the defendants.