STATE v. ROBERT POOLE and Another.[1]

July 29, 1904.

Nos. 13,992, 13,993—(216, 217).

**Game Law.**

The defendants were convicted of the offense of having in their possession wild ducks, with intent to sell them, as defined and punished by section 45, c. 336, p. 606, Laws 1903. *Held*:

**Constitution—Cruel Punishment.**

1. The statute is not unconstitutional for the alleged reason that it provides for the imposition of excessive fines and the infliction of cruel and unusual punishments.

**Charge to Jury.**

2. The court did not err by its refusal to instruct the jury to return a verdict of not guilty as to the defendant P., for the evidence was sufficient to justify his conviction. It was otherwise as to the defendant K.

**Admission of Evidence.**

3. The court did not err in its rulings as to the admission of evidence, nor in its instructions to the jury, except as to the defendant K.

Appeals by defendants, Robert Poole and William Kerr, from separate judgments of the district court for Jackson county, Quinn, J., whereby they were convicted, under a joint indictment, of violation of the state game law. Affirmed as to defendant Poole. Reversed, and new trial granted, as to defendant Kerr.

*H. G. Latourell* and *Knox, Faber & Knox,* for appellants.

*W. J. Donahower,* Attorney General, and *C. W. Somerby,* Assistant Attorney General, for the State.

START, C. J.

The defendants were jointly indicted by the grand jury of the county of Jackson for having on September 28, 1903, in their possession two thousand wild ducks, with intent to sell them. They were tried together upon the indictment in the district court of the county of Jackson, and each was found guilty by the jury of having in his possession two thousand ducks, with intent to sell the same. Thereupon it was

[1] Reported in 100 N. W. 647.

adjudged in the case of defendant Poole that he pay a fine of $20,000, and that he be imprisoned in the county jail until the fine is paid, not exceeding two hundred days. The judgment in the case of the defendant Kerr imposed a like fine, with imprisonment in the county jail until the fine is paid, not exceeding three hundred days. Each of the defendants appealed from the judgment against him.

1. The statute for a violation of which the defendants were convicted is section 45 of chapter 336, p. 606, Laws 1903, which, so far as here material, reads as follows:

> No person shall * * * have in possession with intent to sell * * * at any time any * * * wild duck of any variety. * * * Whoever shall offend against any of the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof, shall be punished by a fine of not less than ten (10) dollars, nor more than twenty-five (25) dollars, and costs of prosecution, or by imprisonment in the county jail for not less than ten (10) days nor more than thirty (30) days for each and every bird so * * * had in possession with intent to sell.

The defendants contend that, if this statute be valid, then, under the form of the indictment in this case, only a single misdemeanor is charged, and the maximum penalty cannot exceed a fine of $25 or imprisonment for thirty days; and, further, that if the state desired or intended to avail itself of the penalty for each bird charged to have been unlawfully in the defendants' possession, the indictment should have contained a separate count for each bird.

It is obvious that the indictment charges one act; that is, the possession by the defendants, at a particular time and place, of two thousand wild ducks, with intent to sell them. It necessarily follows that the indictment charges only one offense, and that the act constituting the offense cannot be subdivided, and made the basis for two thousand indictments. The punishment, however, for a single act is graded by the statute according to the number of birds unlawfully possessed; hence the fine imposed upon the defendants was authorized by the statute. Is the statute, so construed, constitutional? The de-

fendants insist that it is not, for the reason that it is in conflict with section 5 of article 1 of the state constitution, which provides:

> Excessive bail shall not be required; nor shall excessive fines be imposed nor shall cruel or unusual punishments be inflicted.

Although each of the defendants was fined $20,000, the trial court imposed the mildest punishment the statute would permit for the offense of which the defendants were convicted. It must be admitted that the penalties fixed by the statute are drastic when imposed in cases where there has been a wholesale violation of the law. It is, however, clear that the purpose of the statute is to protect the wild game of the state, and that, if the punishment were not graduated according to the number of birds unlawfully possessed, this purpose would be defeated. If the penalty were not graduated, so that the greater the offense the greater the punishment, the statute would invite its own defeat. It would be absurd. to punish the unlawful possession of two thousand or more birds on the basis of one. It would have been competent for the legislature to, have provided that the unlawful possession of each bird should be a distinct offense, punishable by a fine of not less than $10 nor more than $25, or by imprisonment in the county jail for not less than ten nor more than thirty days. If such were the statute, it could not be fairly claimed that the fine was excessive, or the imprisonment cruel or unusual, although separate indictments might be found for each offense, and in case of convictions cumulative sentences would be legal. Now, the statute in question secures the same result by treating the unlawful possession of wild ducks, no matter how many, as one offense, and graduating the punishment according to the number of birds—that is, the number of offenses, if the possession of each were declared a separate offense—thereby avoiding separate indictments and cumulative sentences. So, in its last analysis, the fines imposed in this case are seemingly excessive not by reason of the statute, but by reason of the magnitude of the offense, or of its equivalent, the number of offenses of which the defendants were convicted. The fault is theirs, not that of the statute.

This method of fitting the punishment to the crime by graduating the penalty according to the number of animals, birds, or fish unlawfully killed, taken, or possessed has been adopted by the statutes of many

of our sister states, and sustained as a proper exercise of legislative discretion. In this connection the case of State v. Lubee, 93 Me. 418, 45 Atl. 520, is an instructive one. The statute under consideration in that case made it unlawful to have in possession any short lobsters, and fixed the fine at $5 for each lobster. The value of such lobsters was from one to two cents each, and it was urged that the statute provided for excessive fines. The court held otherwise, and sustained the law for the reason that: "If the law, as urged by the respondent's counsel, be onerous to those who, like the respondent, have large numbers of small lobsters in their possession, it is the fault, not of the law, but of the infractors." See also State v. Craig, 80 Me. 85, 13 Atl. 129; Blydenburgh v. Miles, 39 Conn. 484, and State v. O'Neil, 58 Vt. 140, 2 Atl. 586.

The question we are considering is settled by the decision of this court in the case of State v. Rodman, 58 Minn. 393, 59 N. W. 1098. The statute considered in that case was Laws 1893, p. 239, c. 124, § 9, which provided for the punishment of any person who should have in his possession during the closed season any variety of deer by a fine of not less than $50 nor more than $100, or by imprisonment in the county jail for not less than sixty days nor more than ninety days for each animal in possession. Such punishment is relatively quite as severe as that provided in the statute here in question. One of the defendants in that case was charged with having in his possession parts of fifty eight deer, the maximum punishment for which, as provided by the statute, was a fine of $5,800, or imprisonment in the county jail for some sixteen years. It was, however, held that the statute was not a violation of the mandate of the constitution prohibiting the imposition of excessive fines or the infliction of cruel or unusual punishments. The basis of the decision was that graduating the penalty according to the number of animals unlawfully possessed was, in legal effect, the same as making the unlawful possession of each animal a separate offense; so that, the greater the offense committed, the greater the punishment would be.

We are unable to distinguish in principle this case from the one referred to, and, following that case, we hold that the statute under which the defendants were convicted is not unconstitutional because it

provides for the imposition of excessive fines and the infliction of cruel or unusual punishments.

2. The trial court, at the close of the evidence, was requested by each defendant to instruct the jury to return a verdict of not guilty as to him. Each request was refused, and the ruling is here assigned as error, for the reason that the evidence is not sufficient to sustain a verdict of guilty; hence the requests should have been given. The charge against the defendants was not simply having the ducks in possession, but having them in possession with intent to sell them. Such intent is an essential element of the crime, which must be established by competent evidence before a conviction can be had. This intent cannot be inferred from the mere fact of possession. Ordinarily, the intent of a party cannot be proven by direct evidence, but it may be shown by his acts—what he does, and the way he does it.

The evidence was ample to show that the defendant Poole had the ducks in his possession with the intent to sell them, and as to him the court did not err in refusing to direct a verdict of not guilty. The evidence tends to show that he was in the possession of the ducks on September 28, 1903, and that he had them in an icehouse belonging to a third party, in the village of Lakefield, where he was packing them in boxes and barrels with ice and saw dust; that he caused five teams to assemble at the icehouse after dark of that day; that the boxes and barrels were loaded into the wagons to which the teams were attached; that the wagon train thus loaded, and under his personal direction, started for Montgomery, Iowa, where it arrived about three o'clock the next morning; that he rode on the different wagons, and that as the party neared the end of their journey, the railway station in Montgomery, they heard a buggy coming up behind the wagon train, and he said he would go back and see who it was; that the buggy contained the sheriff of the county of Jackson, this state, and a member of the game and fish commission; that when questioned by the officers he said the boxes contained poultry, and they must not meddle with them; that the officers caused the wagon train and its contents to be returned to this state; that on the way back he said to them, in substance, that their actions would break up the game law of Minnesota, for there was money behind the case, and it would go to the supreme court before it was finished; that the boxes and barrels, when opened, were

found to contain twenty four hundred ninety eight wild ducks; and, further, that there was a railway station at Lakefield and one at Montgomery, Iowa, some sixteen miles south of Lakefield.

Now, the defendant Poole acted from a motive in all that he did with reference to the ducks while in his possession. What was his intention with reference to them? Was it a lawful or an unlawful one? What is the necessary inference from what he did with reference to the ducks and the way he did it? Why did he pack them for shipping? Why did he assemble the wagon train, and under cover of darkness take the boxes and barrels out of the state? Why his anxiety when he heard a buggy coming up behind the train? Why did he misrepresent the contents of the boxes to the officers? These questions cannot be reasonably answered except upon the hypothesis that he had the ducks in his possession with the unlawful intent to sell them. We hold that as to the defendant Poole the evidence was sufficient to justify his conviction.

The evidence as to the defendant Kerr is less satisfactory. As to him it tends to show that for a number of years prior to September 28, 1903, he was engaged at Lakefield in the business of buying and selling poultry, butter, and eggs; that for two years prior to that time the defendant Poole was employed by him in his business; that about a week before the day in question the defendant asked a party if he could haul a load of poultry for him, and received an affirmative answer; that he paid to a livery firm their monthly bill, in which there was a charge for teams used in hauling two loads of the ducks in question. This is substantially all of the evidence relied upon by the state to sustain the conviction of the defendant Kerr. There was no evidence that he ever had any of the ducks in his possession or under his control, or that he had any knowledge of their existence. He was engaged in a legitimate business, and the mere fact that Poole was his employee does not tend to connect him with Poole's unlawful possession of ducks which were in the icehouse of a third party. The fact that Kerr paid for the teams for hauling two loads of the ducks is a significant one, but the circumstances under which such payment was made are not disclosed by the record. It might have been honestly made at Poole's request, or otherwise. The burden was upon the state to establish beyond a reasonable doubt that the defendant Kerr had in his possession

or under his control the ducks in question with intent to sell them.    If it has established, by such measure of proof, the fact that Kerr was the principal and Poole his agent or employee in the transaction, both were rightfully convicted.   But we may not guess that such was the fact. Upon the whole record we cannot say that the evidence was sufficient to warrant the conviction of the defendant Kerr of an offense the lowest punishment for which is a fine of $20,000.   We accordingly hold that it was error for the court to submit to the jury the question of his guilt.

3. Errors are assigned as to the instructions of the trial court to the jury.   The charge of the court was a fair and correct statement of the law applicable to the case, and substantially covered the special requests of defendants for instructions, except the one for a directed verdict of not guilty which we have considered.

4. Only one of the alleged errors of the court in its rulings on the admission of evidence merits special consideration.   The court, over the objections of the defendants, received evidence tending to show that shortly prior to the day the ducks were hauled from the icehouse a team under the personal guidance of the defendant Poole was driven to a camp on a point in Heron Lake, some distance from Lakefield, and there, about dark, loaded with a number of sacks, which were filled and tied up.  The team was then driven to the icehouse in question, and the sacks placed therein by Poole's direction.   This evidence was competent and material, for it tended to show conduct on the part of Poole proper for the consideration of the jury on the question whether he had possession of the ducks, which he afterwards packed in the icehouse, with intent to sell them.

It follows that the judgment as to the defendant Poole must be affirmed, and that the judgment as to the defendant Kerr must be reversed, and a new trial granted.   So ordered.