STATE v. IRA H. SHATTUCK and Another.[1]

October 20, 1905.

Nos. 14,458—(17).

**Sale of Game.**

  Section 45, c. 336, p. 606, Laws 1903, which provides that "no person shall  * * * sell to any one  * * * at any time any  * * * ruffed grouse," construed, and *held*, that the statute applies to all ruffed

[1] Reported in 104 N. W. 719.

grouse, whether captured within or without this state, and, further, that, so construed, it is not in conflict with the constitution of this state or of the United States.

Appeal by defendants from a judgment of the municipal court of Minneapolis, C. L. Smith, J. Affirmed.

*Koon, Whelan & Bennett,* for appellants.

*Douglas & Griggs,* for the State.

START, C. J.

The defendants on April 4, 1905, were convicted in the municipal court of the city of Minneapolis of the alleged offense of selling on December 5, 1904, a certain game bird, known as "ruffed grouse." They appealed from the judgment, and here urge two reasons why it should be reversed.

The here material provisions of the statute upon which the conviction is based are as follows:

> No person shall  *  *  *  sell to any one, have in posses-
> sion with intent to sell or have in possession or under control, at
> any time any  *  *  *  ruffed grouse,  *  *  *  except that any
> *  *  *  ruffed grouse or pheasant may be killed and had in
> possession between the 15th day of October and the 15th day of
> December following,  *  *  *  and when any of the birds
> mentioned in this section have been lawfully caught, taken,
> killed or had in possession during the time herein allowed they
> may be had in possession for the five days after the time herein
> allowed.  Laws 1903, p. 606, c. 336, § 45.

It appears from the record that on December 5, 1904, Samuel F. Fullerton, with some other gentlemen, went to the Nicollet Hotel Cafe in Minneapolis, of which the defendants were the proprietors, and upon their request they were served by the servants of the defendants with a ruffed grouse. This particular bird was killed in the state of Wisconsin, brought into the state of Minnesota, thereafter came to the possession of the defendants, and was kept in the storeroom of their café until sold as stated.

1. The first reason urged why the judgment should be reversed is.

that the statute in question does not apply to wild game brought into this state from another state.

The manifest purpose of the statute is to protect the game of this state, and not that of any other state; but the legislature, in the exercise of its police powers, might well conclude that a reasonable and effective method of protecting the ruffed grouse of this state would be to prohibit within the state the sale of such game, without reference to the state wherein it was captured. Or, in other words, the intention of this statute was to absolutely prohibit trafficking in such game within the state, leaving those who desire it for their pleasure or personal use free to go and capture it, at such times and subject to such reasonable limitations as the legislature might prescribe. It is not to be doubted that, if commercialism be eliminated by prohibiting the sale of game within the state, all motive would be removed for hunters for revenue only to engage in the business of killing game in such quantities as to extinguish the species in the course of a few years. Such a prohibition, therefore, is a potent protection to the game of our state. If, however, such protection be limited to game captured in this state, its purpose would be in a large measure defeated; for, when commingled, game of the same kind captured in this and other states cannot be readily, if at all, distinguished. Hence, to make the closing of the market for game an efficient method of protecting game of our own state, the prohibition must extend to all game; for, if the market be closed to the game of this state and left open to the game of other states, it would not be difficult to defeat the purpose of the statute by evasion, fraud, and lying. This statute, then, unless the language in which it is expressed forbids, must be construed so as to give effect to the purpose for which it was enacted and not so as to defeat it. The language is this: "No person shall * * * sell to any one * * * at any time any * * * ruffed grouse." This clear and precise prohibition extends to all ruffed grouse, and we cannot construe the statute so as to exclude from its operation game killed in other states and brought into this state and here sold, without disregarding not only the manifest purpose of the statute, but also its unequivocal language. The statute means just what it says.

Counsel for the defendants cite and rely upon the following cases: People v. O'Neil, 71 Mich. 325, 39 N. W. 1; Commonwealth v. Wilk-

inson, 139 Pa. St. 298, 21 Atl. 14; Commonwealth v. Hall, 128 Mass. 410. The statute of Michigan construed in the first case cited prohibited the sale of "any of the kinds or species of birds protected by this act." It was the game of the state of Michigan which was protected by the act; hence it was necessarily held that the prohibition extended only to such game. The Pennsylvania statute provided that no person shall "kill or expose for sale or have in his or her possession after the same has been killed any quail," etc., and it was held in the second case cited that the prohibition against killing game was necessarily limited to game of the state, because the statute could not, and was not intended to have, any extraterritorial effect, and, further, that the clause, "after the same has been killed," referred to the same game that it was unlawful to kill; that is, the game of the state. The statute of Massachusetts provided that

> Whoever in this commonwealth takes or kills any &ast; &ast; &ast; ruffed grouse, &ast; &ast; &ast; or &ast; &ast; &ast; sells, buys, has in possession or offers for sale any of said birds, shall upon conviction be punished by a fine of twenty dollars for each and every such bird.

It was, in the last case cited, held that the statute had reference only to birds killed in "this commonwealth"; that is, in Massachusetts. It is clear that by reason of the difference in the statutes construed none of the cases cited is here in point. We hold that the statute prohibits the sale of ruffed grouse within this state, whether it was killed in this state or killed and brought from another state.

The statute as thus construed does not violate any of the provisions of our state constitution, as the defendants claim. Their contention is that the statute, if so construed, violates section 7, article 1, of our constitution, in that it deprives them of their property without due process of law. The argument in support of this claim, briefly stated, is that the game in question was lawfully captured in the state of Wisconsin, and thereby became the absolute property of its captor and of those to whom he might sell it; hence it was their private property, lawfully obtained and held by a title which was independent of this state, at the time they sold it. Therefore any law which forbids such

a sale of their private property within this state deprives them of their property without due process of law.

The argument seems plausible, but it is unsound in principle; for when private property is brought from one state into another state, and becomes a part of the mass of property thereof, the police power of that state attaches to it, precisely as it does to like property originally therein. The title to all wild game is in the state, in trust for the citizens thereof, and is not subject to private ownership, except upon such conditions and limitations as the state may impose, in the exercise of its police powers, for the protection of such game. While such power cannot be extended to game in another state, yet if it is voluntarily brought into this state, and it is reasonably necessary to then subject it to the same police regulations as apply to game captured within this state, in order to prevent the extinction of game in this state, the legislature has the undoubted right to do so. Subjecting such game to the same limitations and restrictions as are applied to like game captured within the state does not deprive the owner thereof of his property without due process of law; for he voluntarily brings his property into this state, with knowledge of such restrictions, which are necessary for the protection of the property of the state. The effect of many valid police regulations is to restrict and impair rights of property, but in such cases private interests must yield to public interests.

The conclusion we have reached is supported by the great weight of judicial authority. State v. Rodman, 58 Minn. 393, 59 N. W. 1098; State v. Northern Pac. Exp. Co., 58 Minn. 403, 59 N. W. 1100; State v. Chapel, 63 Minn. 535, 65 N. W. 940; State v. Poole, 93 Minn. 148, 100 N. W. 647; Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600; Magner v. People, 97 Ill. 320; Ex parte Maier, 103 Cal. 476, 37 Pac. 402; People v. Bootman, 180 N. Y. 1, 72 N. E. 505.

2. This brings us to the second reason urged by the defendants for a reversal of the judgment, which is that the statute in question violates section 1, article 14, of the amendments to the constitution of the United States, in that it deprives the owner of his property without due process of law; also section 8, article 1, thereof, in that it is an interference with interstate commerce.

The fourteenth amendment does not impair the police powers of the state. Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357; Wiscon-

96 M.—4

sin, M. & Pac. R. Co. v. Jacobson, 179 U. S. 287, 21 Sup. Ct. 115. It follows, then, that if, as we hold, the statute under consideration does not deprive the owner of the game, the sale of which is prohibited, of his property without due process of law, the statute is not in conflict with the fourteenth amendment. It is equally clear that the statute, as we have construed it, is not an interference with interstate commerce; for the game in question was at the time of the sale a part of the mass of property of this state and subject to the police powers of the state. If there was ever any doubt about this proposition, it is set at rest by the act of Congress (Act May 25, 1900, c. 553, 31 St. 187 [U. S. Comp. St. 1901, 290]), known as the "Lacey Act," which provides that the dead bodies or parts thereof of wild game animals or game or song birds when transported into any state shall be subject to the laws of the state, enacted in the exercise of its police powers, to the same extent as if such game had been produced in such state, and shall not be exempt therefrom by reason of importation in original packages. This eliminates all questions of interstate commerce. People v. Bootman, supra.

Our conclusion is that the statute in question prohibits the selling of any ruffed grouse, whether it is captured within or without this state, and that, so construed, it is not in conflict with either the state or federal constitution.

Judgment affirmed.