STATE EX REL. OHSMAN & SONS COMPANY, INC. v.
ERNEST R. STARKWEATHER.[1]

January 29, 1943.

No. 33,319.

[1]Reported in 7 N. W. (2d) 747.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *Mandt Torrison,* Special Assistant Attorney General, for appellant (respondent below).

*Briggs & Briggs,* for respondent (relator below).

HENRY M. GALLAGHER, CHIEF JUSTICE.

This is a proceeding in *mandamus* to compel the director of the division of game and fish, state department of conservation, to issue a resident fur buyer's license to Ohsman & Sons Company, an Iowa corporation, authorized to do business in this state and having a place of business in Mankato.

The petition upon which an alternative writ of *mandamus* issued alleges in part:

"III.

"That in January, 1942, pursuant to Chapter 410, the Laws of 1941, the relator sent to respondent an application for a resident fur buyer's license together with a check for five dollars ($5.00) and a corporate surety bond in favor of the State of Minnesota in the penal sum of one thousand dollars ($1,000.00). That thereafter said application, bond and check were returned to the relator with an accompanying letter from Albert E. Klancke, License Clerk, stating that relator would be required to purchase a nonresident fur buyer's license and pay a two hundred dollar ($200.00) fee in order to receive authority to do business as a fur buyer.

"That thereafter on the 2nd day of February, 1942, relator through its manager, Herman Ohsman, renewed its request to the department and left the same application, check, and bond. That on February 3rd, 1942, the attorney for the Department of Conservation, Mandt Torrison, wrote to relator's attorney to the effect that a resident fur buyer's license could not be authorized.

"IV.

"That the respondent still refuses to issue a resident license to the relator and that further demand is futile. That relator has no sufficient or adequate remedy at law and unless licensed must discontinue its fur buying business."

The director demurred upon the ground "that the facts stated in the petition and writ do not constitute a cause of action." The trial court overruled the demurrer with leave to the director to file a return within ten days. No return having been filed, judgment was entered commanding the director to issue to Ohsman & Sons Company, Incorporated, a "resident wholesale fur dealer's license." The director appeals from the judgment.

The sole question presented is whether a foreign corporation licensed to do business in this state is entitled to receive a resident fur buyer's license upon payment of the fee prescribed for residents of this state or whether it must pay the fee prescribed for nonresidents.

The statute pertaining to the issuance of fur dealers' licenses is L. 1941, c. 410 (Minn. St. 1941, § 98.12), amending Mason St. 1940 Supp. § 5547, which provides:

"No person shall engage in the business of buying furs until he shall have procured a license so to do from the director. Fees, payable to the director, for such license shall be as follows: For a local resident fur buyer's license, $5.00; for a resident traveling fur buyer's license, $10.00; for a non-resident local or traveling fur buyer's license, $200.00; for a resident wholesale fur buyer's license, $5.00."

Statutes regulating the taking of wild life are within the police power of the state. The underlying theory of such statutes is stated in Lacoste v. Dept. of Conservation, 263 U. S. 545, 549, 44 S. Ct. 186, 187, 68 L. ed. 437, thus:

"The wild animals within its borders are, so far as capable of ownership, owned by the State in its sovereign capacity for the

common benefit of all of its people. Because of such ownership, and in the exercise of its police power the State may regulate and control the taking, subsequent use and property rights that may be acquired therein. Geer v. Connecticut, 161 U. S. 519, 528, 16 S. Ct. 600, 40 L. ed. 793; Ward v. Race Horse, 163 U. S. 504, 507, 16 S. Ct. 1076, 41 L. ed. 244; Silz v. Hesterberg, 211 U. S. 31, 39, 29 S. Ct. 10, 53 L. ed. 75; Patsone v. Pennsylvania, 232 U. S. 138, 143, 34 S. Ct. 281, 58 L. ed. 539; Kennedy v. Becker, 241 U. S. 556, 562, 36 S. Ct. 705, 60 L. ed. 1166; Carey v. South Dakota, 250 U. S. 118, 39 S. Ct. 403, 63 L. ed. 886; State v. Rodman, 58 Minn. 393, 400, 59 N. W. 1098."

See also Selkirk v. Stephens, 72 Minn. 335, 75 N. W. 386, 40 L. R. A. 759; State v. Poole, 93 Minn. 148, 100 N. W. 647, 3 Ann. Cas. 12; State v. Shattuck, 96 Minn. 45, 104 N. W. 719, 6 Ann. Cas. 934.

It is settled law that the state may impose upon nonresidents a larger license fee than it imposes upon residents. The discrimination in the case of hunting and fishing licenses is justified under the police power on the ground that game, fish, and fur-bearing animals when not reduced to possession belong to the state, as a part of its natural resources, which it can protect and save for its own citizens. 24 Am. Jur., Game and Game Laws, p. 386, § 16; Annotations, 61 A. L. R. 338, and 112 A. L. R. 63; Williams v. Fears, 179 U. S. 270, 21 S. Ct. 128, 45 L. ed. 186; American Harrow Co. v. Shaffer, 68 F. 750; State v. Smith, 71 Ark. 478, 75 S. W. 1081; In re Eberle, 98 F. 295.

Relator does not dispute the right of the state to pass statutes regulating the taking of wild life or to discriminate against nonresidents, but it contends that, having procured a certificate of authority from the secretary of state pursuant to Minn. St. 1941, § 303.09 (Mason St. 1940 Supp. § 7495-8), it is entitled to the same "rights and privileges" as a domestic corporation, including the right and privilege to procure a resident fur buyer's license upon payment of the $5.00 fee required of a resident of this state. In

support of its contention relator cites Republic Motor Truck Co. Inc. v. Buda Co. 212 Mich. 55, 179 N. W. 474. That case held that, aside from the general rule that (212 Mich. 61, 179 N. W. 477) "corporations have no residence beyond the limits of the sovereignty or State by which they are created," it is still within the power of the states to "by legislation for themselves and within their limits domesticate foreign corporations *quoad hoc,* in respect to and for the particular purpose of jurisdiction over them within the State, imposing upon and granting to those desiring to conduct their business within the State the rights, duties and obligations of domestic corporations, *so that they shall be for all jurisdictional purposes, when having a situs and so operating within the State limits, in legal status and effect domestic corporations."* (Italics added.) The case does not by its holding or its language go any further than to say that foreign corporations may become *domesticated for jurisdictional purposes.*

Also relied upon by relator is an opinion of the attorney general under date of December 10, 1940, which held that when a corporation domesticated in Missouri obtained a certificate of authority to transact business in Minnesota it "became subject to the motor vehicle registration laws in the state of Minnesota in the same manner that a domestic corporation is subject to them." The opinion does not say, nor even intimate, that a foreign corporation upon becoming licensed to do business in this state becomes domesticated or resident here for all purposes.

Minn. St. 1941, § 303.09 (Mason St. 1940 Supp. § 7495-8), provides:

"After the issuance of a certificate of authority by the secretary of state and until cancellation or revocation thereof or issuance of a certificate of withdrawal, the corporation *shall possess within this state the same rights and privileges that a domestic corporation would possess if organized for the purposes set forth in the articles of incorporation of such foreign corporation pursuant to which its certificate of authority is issued, and shall be subject to the laws of this state."* (Italics added.)

Clearly, the above statute grants to foreign corporations so licensed the same "rights and privileges" enjoyed by domestic corporations. It does not, however, transform such corporations into domestic or resident corporations. Coca Cola Co. v. Allison, 52 Tex. Civ. App. 54, 113 S. W. 308; Cumberland Presbyterian Church v. Burbank, 199 Iowa 739, 202 N. W. 834; People v. Woman's Home Missionary Society, 303 Ill. 418, 135 N. E. 749. By coming into the state in duly licensed corporate form, a nonresident corporation does not change its status as such. The general corporation law enabling nonresident corporations to do business in the state with the same rights and privileges as those of similar domestic corporations does not grant them immunity from licensing or taxation on a basis or classification different from that applied to domestic corporations in cases where the fact of residence or nonresidence is a valid distinguishing element of the classification. Cumberland Presbyterian Church v. Burbank, 199 Iowa 739, 202 N. W. 834, *supra;* People v. Setunsky, 161 Mich. 624, 126 N. W. 844; 24 Am. Jur., Game and Game Laws, p. 386, § 16.

The corporation act is designed to protect society's dealings with businesses conducted in corporate form. The fur dealer's license act is designed to protect local wild life for the people of Minnesota. The two acts are not inconsistent, and each can be given full force and effect without defeating the language or purposes of the other. It cannot be said that by merely licensing a foreign corporation to do business here the state in effect adopted or domesticated it. Relator, although authorized to conduct its business here, remains a nonresident, and as such is required to pay the fee assessed against all nonresidents.

Reversed.