**IN THE COURT OF APPEALS OF IOWA**

No. 22-1523
Filed May 8, 2024

**IN THE MATTER OF THE ESTATE OF SHIRLEY M. CLEGG, Deceased.**

**JILL C. CROHAN, JAY R. CLEGG, and JOHN H. CLEGG,**
     Plaintiffs-Appellants,

**vs.**

**MEARDON, SUEPPEL & DOWNER P.L.C.,**
     Lienor-Appellee.

_____

     Appeal from the Iowa District Court for Washington County, Shawn Showers, Judge.

     The plaintiffs in a will contest appeal the orders directing the clerk of court to hold funds subject to an attorney's lien until ownership is determined. **AFFIRMED.**

     William J. Miller and Manuel A. Cornell of Dorsey & Whitney LLP, Des Moines, for appellants.

     Robert N. Downer and Sean W. Wandro of Meardon, Sueppel & Downer P.L.C., Iowa City, for appellee.

     Heard by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

The plaintiffs in a will contest appeal the orders directing the clerk of court to hold funds subject to an attorney's lien until ownership is determined. Because the district court did not abuse its discretion, we affirm.

**I. Background Facts and Proceedings.**

Shirley Clegg died in November 2018, and her will was admitted to probate. In April 2019, three of Shirley's heirs—John Clegg (Jack), Jill Crohan, and Jay Clegg[1]—petitioned to set aside the 2012 will. Their claims were resolved when the parties entered a family settlement agreement (FSA), which the court accepted in January 2022. All the plaintiffs' claims against the estate were dismissed with prejudice by April 5, 2022.

The plaintiffs changed their legal representation during the will contest. From January 2020 until June 2021, Meardon, Sueppel & Downer P.L.C. (Meardon Firm) represented the plaintiffs. By signing the engagement letter, the plaintiffs agreed to compensate Meardon Firm with a blend of a reduced hourly rate[2] and a reduced contingency fee.[3] The plaintiffs terminated Meardon Firm's services, claiming that the firm intentionally withheld a conflict of interest. Jill and Jay then engaged the services of Siobhan Briley of Pugh Hagan Prahm PLC (Pugh Firm) while Jack represented himself.

---

[1] We refer to Jack, Jill, and Jay collectively as "the plaintiffs."
[2] Meardon Firm agreed to reduce its customary hourly rates from $325 to $162 per hour for the services of Robert Downer and from $225 to $112 per hour for the services of Sean Wandro.
[3] The plaintiffs agreed that if successful, Meardon Firm is entitled to 15% of the amount they received.

In November 2021, Meardon Firm filed a notice of attorney's lien in the amount of $57,971 based solely on hourly fees. Shortly after, the plaintiffs and the defendants[4] in the will contest entered a family settlement agreement (FSA). The FSA provides that the defendants would pay the plaintiffs $1,325,000 in exchange for dismissing their claims against the estate.[5] It states, "This Agreement is subject to the Defendants securing financing in an amount sufficient to fund this Agreement. They will use their best efforts to secure such financing and to meet the payment deadline of closing this matter within [sixty] days after Court approval, if financing is secured." While Paragraph 8 provides that the defendants "will pay $25,000 toward the plaintiffs' attorney's fees with Siobhan Briley attorney's fees," Paragraph 10 makes the plaintiffs "responsible for satisfying and obtaining a release of all liens filed against them for legal services, including the lien filed by Meardon [Firm]." The defendants applied for the court's approval of the FSA on December 2, and the court ordered the parties to object to the FSA in writing before the January 5 hearing on the application.

Around the time the parties agreed to the FSA, Attorney Briley phoned Meardon Firm with an offer to pay $30,000 for a release of the attorney's lien. Meardon Firm rejected the offer in a December 7 email, stating its intent to amend the attorney's lien to $133,245.12 once the court approved the FSA.

The district court approved the FSA on January 5, and Meardon Firm amended its attorney's lien the same day. The executor transferred title of the

---

[4] We refer to the other heirs to Shirley's will as the defendants.

[5] The settlement required that the defendants obtain sufficient financing within sixty days of the court approving the agreement.

estate farm to the defendants' limited liability company, and the defendants obtained a loan secured by a mortgage on the property to pay the plaintiffs the $1,325,000 due under the FSA. The distribution of the loan proceeds in settlement of the defendants' payment obligation under the FSA included paying $133,245.12 to the Washington County Clerk of Court for Meardon Firm's attorney's lien. The clerk returned the lien funds to the defendants and directed them to send the funds to Meardon Firm. Instead, the defendants deposited the lien funds into the trust account of Pugh Firm, which agreed to hold the funds until disbursed by the court. The defendants then notified the court that they complied with the FSA and moved the plaintiffs to dismiss their claims. Meanwhile, Jack moved the court to dismiss Meardon Firm's lien claim, and Meardon Firm applied to foreclose on the funds held by Pugh Firm based on its lien.

On March 20, the district court ordered the plaintiffs to dismiss their claims against the defendants with prejudice.[6] The order states that any claim by Jack against Meardon Firm "will not be litigated in this estate proceeding." It denied Jack's motion to dismiss as incompatible with the FSA and directed the estate to "take the necessary steps to finalize the closing of this estate."

Meardon Firm moved the court to enlarge or amend its March 20 ruling. It claimed that the plaintiffs did not intend to satisfy the attorney's lien unless ordered to do so. It also asked the court to confirm its right to a lien in the amount of $133,245.12 and direct Pugh Firm to disburse the funds to satisfy the lien. In

---

[6] Jill and Jay dismissed their claims the next day. When Jack failed to do so, the court dismissed his claims in an order entered on April 5.

denying the motion, the court reiterated that it would not decide the validity of the attorney's lien in the estate proceeding:

> Based on the language of the [FSA] and applicable law, the Court finds that the lien filed by the Meardon Firm is not properly litigated in this estate proceeding. The lien amount did change from the time of the [FSA] and there is not a specific directive that any counsel hold funds for the benefit of plaintiffs' unpaid attorney fees. It is clear that plaintiffs did incur significant legal expenses and the Meardon Firm worked several hours on this will contest and removal action.
> The FSA provides that [the plaintiffs] are responsible for satisfying and obtaining a release of all liens filed against them for legal services, including the lien filed by Meardon [Firm]. . . .
> However, the avenue for enforcing this lien for attorney fees is not through the estate proceeding, but a separate action involving the plaintiffs as debtors.

On May 5, Attorney Briley asked the court to order the clerk of court to accept the lien funds from Pugh Firm's trust account and hold them until a court determines ownership.[7] Meardon Firm agreed that such order should issue, while Jack agued the court should order Pugh Firm to distribute the funds between the plaintiffs. Attorney Briley then moved to withdraw from representing Jill and Jay, citing a breakdown in the attorney-client relationship and resolution of the matter for which Jill and Jay engaged her representation.[8] The court approved Attorney Briley's withdrawal on July 14.

In an order entered on July 15, the district court directed the clerk of court to accept and hold the funds from Pugh Firm until the attorney's lien is resolved. It found that the plaintiffs were no longer parties to the probate action and Pugh

---

[7] Jill and Jay claim that counsel did so without their authority.

[8] The motion states, "As the estate litigation has concluded and undersigned counsel no longer represents Jill and Jay in any active proceeding, 'withdrawal can be accomplished without material adverse effect on the interests of' Jill and Jay."

Firm could neither release the lien funds to the plaintiffs nor transfer them to Meardon Firm. It also reaffirmed its March 20 and April 5 orders, directing Meardon Firm to file a separate action to enforce its lien.[9]

The plaintiffs appeal.[10]

**II. Scope and Standard of Review.**

"Probate actions are tried in equity," and cases in equity are reviewed de novo. *In re Est. of Whalen*, 827 N.W.2d 184, 187 (Iowa 2013). The parties agree that our review is de novo. On de novo review, "[w]e give weight to the probate court's factual findings, particularly on the credibility of witnesses, but are not bound by them." *Id.*

**III. Discussion.**

To begin, the court must determine the issue on appeal. In their brief, the plaintiffs contend that the district court exceeded its jurisdiction "after being misled about the . . . defendants' alleged performance of the FSA and the nature of the funds." To the extent that the plaintiffs challenge the defendants' performance under the FSA, they have not preserved error. *See Buboltz v. Birusingh*, 962

---

[9] Jack moved the court to reconsider its ruling and release the funds between the plaintiffs, which the court denied.

[10] At first, the plaintiffs petitioned the supreme court for writ of certiorari, claiming that the district court exceeded its jurisdiction by ordering the funds transferred to the clerk of court. But the supreme court determined that because the July 15 order directs a fiduciary to take specific action, it is a final order of the probate court and appealable as a matter of right. Treating the writ of certiorari as a notice of appeal, *see* Iowa R. App. P. 6.151(1) (renumbered from rule 6.108 as of Apr. 1, 2024), the supreme court then transferred the appeal to this court, *see* Iowa R. App. P. 6.1101(1). The plaintiffs later appealed the order approving the executor's final report and closing the estate. The plaintiffs moved to consolidate the appeals, which the supreme court denied. As a result, we separately address the issues raised in this appeal and in *In re Estate of Clegg*, No. 22-1953, 2024 WL _____ (Iowa Ct. App. May 8, 2024).

N.W.2d 747, 754 (Iowa 2021) ("A party ordinarily needs to raise and the district court needs to decide an issue before we address its merits on appeal."). Concerns about the defendants' actions in complying with the FSA should have been raised when the defendants moved the court to find they complied with the FSA and order the plaintiffs to dismiss their claims. The court did not address any such concerns, instead finding that the defendants fully complied with the FSA on March 20 and ordering the plaintiffs to dismiss their claims against the defendants with prejudice.[11] The plaintiffs neither moved the court to reconsider the March 20 order nor appealed it. Instead, Jill and Jay dismissed their claims with prejudice on March 21, and Jack did not appeal the April 5 order that dismissed his claims against the defendants with prejudice. Although the court's July 15 order reaffirms the March 20 directive to litigate the attorney's lien in a separate action, that brief reference does not open the door for the plaintiffs to attack the determination the defendants complied with the FSA. Thus, we do not consider the issue of the defendants' compliance with the FSA on appeal.

The plaintiffs appeal the July 15 order and the denial of Jack's motion to reconsider it. Those orders address one issue: the transfer of the lien funds from Pugh Firm to the clerk of court. Thus, the only question before the court on appeal is whether the district court erred by ordering the clerk of court to accept and hold the lien funds until the validity of Meardon Firm's attorney lien is determined.

---

[11] Although supplemental memorandum filed by Jack in support of his February 23 motion to dismiss Meardon Firm's attorney's lien address some of the concerns now raised on appeal, the district court's March 20 order effectively denied his motion without addressing those claims.

The court may order funds held by a third party and subject to a legal dispute deposited with the clerk of court pending resolution of that dispute. *See, e.g.*, Iowa Code § 636.29 (2021) (allowing the court to order property subject to legal dispute held in trust by a third party deposited with the clerk of court); Iowa R. Civ. P. 1.253 (allowing the court to order funds held by an uninterested third party deposited with the clerk of court). It may do so when a party in possession of money that is the subject of litigation admits that the money is due to or being held in trust for another. *See id.*; 26B C.J.S. *Deposits in Court* § 10 (2024). The power to order funds deposited with the clerk of court is discretionary. 26B C.J.S. *Deposits in Court* § 11; *see also Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 114 (1st Cir. 2007) ("As a general proposition, it is within a district court's sound discretion to accept a deposit of settlement funds in order to allow a settling defendant to withdraw from litigation while competing claimants continue to squabble over their entitlement to the settlement proceeds." (citing Garrick v. Weaver, 888 F.2d 687, 694 (10th Cir. 1989))); *Tegtmeier v. PJ Iowa, L.C.*, 189 F. Supp. 3d 811, 825 (S.D. Iowa 2016) ("It is within the court's discretion whether to permit a party to deposit funds with the court under Federal Rule of Civil Procedure 67."); *cf. Smith v. Bitter*, 319 N.W.2d 196, 201 (Iowa 1982) (stating that appointment of a receiver is within the trial court's discretion). "Discretionary rulings of the trial court are presumptively correct and will be disturbed on appeal only upon a clear showing of abuse of discretion." *Glenn v. Carlstrom*, 556 N.W.2d 800, 804 (Iowa 1996). "A district court abuses its discretion when it 'exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly

unreasonable.'" *Davis v. Iowa Dist. Ct. for Scott Cnty.*, 943 N.W.2d 58, 62 (Iowa 2020) (citation omitted).

The district court ordered the lien funds transferred to the clerk of court based on Meardon Firm's attorney's lien and Pugh Firm's obligation under the Iowa Rules of Professional Conduct.

> An attorney has a lien for his services upon any money due his clients in an action prosecuted by him, and in which the judgment was recovered. Such lien, when perfected, operates as an equitable assignment of the interest in the judgment, and gives such attorney an interest thereon from the time it is perfected, by proper entry in the judgment docket in which the judgment is entered.

*Finken v. West*, 910 N.W.2d 629, 632 (Iowa Ct. App. 2018) (quoting *Grimes Sav. Bank v. McHarg*, 251 N.W. 51, 53 (Iowa 1933)). Under Iowa Code section 602.10116(3), an attorney has a lien for a general balance of compensation on money due to a client in the hands of an adverse party in the action in which the attorney was employed. The attorney perfects the lien by giving notice in writing to the adverse party of the amount claimed and for what services. Iowa Code § 602.10116(3).

Iowa Rules of Professional Conduct 32:1.15(e) "effectively integrates into the ethics rules those Iowa statutory provisions granting the lawyer a lien in certain property . . . received by the client through the efforts of the attorney." 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series: Lawyer and Judicial Ethics* § 5:15(d)(1) (updated May 2023). It requires that lawyers in possession of property in which two or more persons claim an interest keep the property separate until resolution while promptly distributing all portions of the property that is not in dispute. Iowa R. Prof'l Conduct 32:1.15(e). The example provided in comment 4

to the rule is that of a client's creditor who has a lien on funds recovered in a personal injury action. *Id.* cmt. 4. "[W]hen the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved." *Id.*

Meardon Firm perfected its attorney's lien by first giving notice of the amount the plaintiffs owed in hourly fees for its representation in the will contest and then amending the amount after to include its continency fee once the court approved the FSA. The defendants then paid $1,325,000 to Pugh Firm's trust account as required by the FSA. As required by our rules of professional conduct, Pugh Firm (1) held the disputed $133,245.12 separate in its trust account and (2) promptly distributed the $1,191,754.88 not in dispute.

Because the defendants performed their duties under the FSA, the plaintiffs' claims were dismissed. The dismissals ended the basis for Pugh Firm's representation of Jill and Jay, and the court granted Attorney Briley's motion to withdraw on July 14. So when the court entered its order on July 16, Pugh Firm no longer represented any of the plaintiffs and had no direct involvement in the fee dispute between the plaintiffs. Because Meardon Firm's attorney's lien put ownership of the funds in dispute and Pugh Firm admitted it owed the funds to another, the court ordered the clerk of court to hold the funds in trust pending a legal determination of ownership or a valid release of the attorney's lien. *Compare Bales v. Warren County*, 478 N.W.2d 398, 399 (Iowa 1991) (allowing the defendants to deposit settlement funds on which medical lien attached with the clerk of court at the time of filing a "third-party petition in equity for declaratory judgment" to determine ownership), *with Ayers v. Brown*, 196 N.W. 1002, 1004

(Iowa 1924) (holding that the district court had no authority to direct payment of funds to the clerk of court where there was no lien, the record did not show any debt, and a legal dispute over the funds was, at best, "a mere possibility"). Because the court did not abuse its discretion by entering the July 15 order, we affirm.

**AFFIRMED.**