# JANUARY TERM, 1906.

## PEOPLE v. LASSEN.

1. FISH—STATUTES—CONSTRUCTION—LIMITATION BY TITLE.

Act No. 88, Pub. Acts 1899, is not, by reason of its title, which is "An act to amend  *,  *  *  'An act to regulate the catching of fish in the waters of this State,'" limited in its scope to fish caught in the waters of the State, but inhibits the possession of any fish of the prohibited size, regardless of where caught.

2. COMMERCE—STATE REGULATION—FISH LAWS.

Act No. 88, Pub. Acts 1899, prohibiting possession of certain fish, is not, though construed to apply to fish lawfully caught in foreign waters, repugnant to the commerce clause of the Federal Constitution (art. 1, § 8). OSTRANDER, J., dissenting.

Error to St. Clair; Law, J.  Submitted April 27, 1905. (Docket No. 190.)  Decided January 23, 1906.

Peter Lassen was convicted of violating the fish law and sentenced to pay a fine of $20 and costs.  Affirmed.

*Avery & Walsh* and *W. J. Beach*, for appellant.

*Alex. Moore*, Prosecuting Attorney, for the people.

MOORE, J.  The following is an agreed statement of the facts:

"On the 29th day of June, 1903, the respondent purchased from one Hitchcock, a Canadian fisherman, 156 wall-eyed pike or pickerel, the whole number weighing 106 pounds.  The purchase was made in the Province of Ontario, in Canada, in the waters of which Province the fish were lawfully caught.  Before the fish were purchased, respondent had made a contract to sell them to Prevor Brothers, Boston, Massachusetts.  These fish, under the direction of respondent, were brought to his fishhouse on

(597)

the banks of the St. Clair river, in the city of Port Huron, where he conducts a wholesale fish business, at which place they were taken from a boat in which they had been conveyed over the river from Canada, and placed on the floor of said fishhouse in the forenoon of June 29, 1903. These fish were kept entirely separate from fish taken from American waters while in respondent's possession. During the afternoon of said day these fish were weighed by a United States customs official while in respondent's fishhouse, and he paid the duty prescribed by United States law upon them, immediately after which the fish were packed with ice in a box under his direction. The box was marked 'Prevor Brothers, Boston, Massachusetts,' and on the same afternoon this box, containing the fish, was delivered to the American Express Company, at respondent's fishhouse, and billed to Prevor Brothers, Boston, Massachusetts. The box containing the fish was then conveyed by the American Express Company to the station of the Grand Trunk Railway Company in the city of Port Huron, and just as the said express company was loading said box in an express car of said railway company it was seized by Fred E. Fisher, a deputy game and fish warden of the State of Michigan, and confiscated. The next day said warden went before a justice of the peace of the city of Port Huron and made the complaint on which this prosecution is based."

The respondent was convicted in the circuit court and brings the case here by writ of error. His claim is:

"*First.* That there is no Michigan statute making it an offense to have in possession in Michigan fish of said kind and weight lawfully caught in the waters of a foreign country.

"*Second.* If the Michigan statutes do refer to such fish, they are void, as in violation of the Federal Constitution (article 1, § 8)."

The statute under which defendant was convicted is Act No. 88, Pub. Acts 1899. Its title reads:

"An act to amend sections one and two, and to add sections six and seven of Act number one hundred and fifty-one of the Public Acts of eighteen hundred ninety-seven, entitled 'An act to regulate the catching of fish in

the waters of this State, by the use of pound or trap nets, gill nets, seines, or other apparatus.'"

It provides:

"*The People of the State of Michigan enact:* * * *

"SEC. 2. It shall be unlawful to market or have in possession any sturgeon, * * * any wall-eyed pike or pickerel weighing less than one pound, * * * each in the round."

The claim is that the title of the act limits the provisions of the statute to fish caught in the waters of this State. We cannot agree with counsel in this view. It is true the title is "An act to regulate the catching of fish in the waters of this State;" but it is a matter of common knowledge that you cannot tell from its appearance where a fish is caught, and as a method of regulation, and to guard against catching fish of less than one pound weight in the waters of this State, it was competent under the title of this act to prohibit having in one's possession fish of the prohibited size. As was said by Justice LONG, speaking for the court in *People* v. *Dornbos*, 127 Mich. 136, referring to the placing of section 2 in the act:

"It is one of the means intended by the legislature to regulate the catching of fish in the waters of the State."

See, also, *Com.* v. *Savage*, 155 Mass. 278.

We now come to the second question, which is more difficult. Is the statute void because in violation of section 8, art. 1, of the Federal Constitution? It is said these fish were the subject of foreign commerce, that their seizure by a State official is a State restriction of foreign commerce, and is clearly in conflict with the interstate commerce clause of the Federal Constitution. The case is ably briefed by counsel, who have collected a large array of authorities. We are also favored with an able article prepared by the learned judge who tried this case, in which the authorities are collected. 60 Cent. Law J. 324.

A careful examination of the authorities shows a wide divergence of opinion. This is illustrated by the two

opinions found in *People* v. *Buffalo Fish Co.*, 164 N. Y. 93 (52 L. R. A. 803), in which the identical questions involved here are discussed. In that case Justice O'Brien wrote an opinion in which he held the statute did not apply to fish taken outside the State, and that, if it did so apply, it would be in contravention of the interstate commerce provision of the Federal Constitution. Parker, C. J., and Landon, J., concurred in this opinion. Werner, J., concurred on the ground that the statute applied only to fish taken from waters within the State. Justice Gray wrote an opinion in which he held that because the fish were lawfully taken in Canada, and were purchased there and imported into the State of New York, upon payment of the duties fixed by the tariff, was not a defense, and that the provisions of the statute inhibiting the possession of the fish were not in conflict with the Federal Constitution. Justices Haight and Martin concurred in the opinion of Justice Gray. The authorities are so fully collated, and the arguments in support of the divergent views of the learned judges are so ably presented, in these two opinions, that we shall not attempt to restate them at length. We do, however, desire to quote briefly from the opinion of Justice Gray as follows:

" The object of this statute was to protect and preserve certain game fishes during the breeding season; an object, manifestly, in which the people of the State may be presumed to be more or less keenly interested, and which is recognized, as Judge Church observed, in all civilized countries. The purpose is to protect certain fishes within our jurisdiction, with no reference to those of other States or countries. If they may be brought into the State within the close season here, as articles of commerce protected by United States laws, and, therefore, placed beyond the reach of State laws declaring and regulating an internal policy, the result would be to facilitate evasions of the law and to make detection difficult, if not impossible. The general tendencies of human nature, it might not inappropriately be observed, are such as to make necessary so strict a law as to render obedience to the mandate certain. The statute aims at preventing game fishes

from being unlawfully taken and exterminated, and any regulation which tends to secure that aim should be regarded as a legitimate and fair exercise of the police power.

"Not an arbitrary, but a wise and politic, purpose is evident in this statutory regulation, touching as it does the interests of the people in a form of food supply, as in a form of sport."

As already stated, the authorities are not agreed. One line of authorities is represented by the opinion of Justice O'Brien; the other by the opinion of Justice Gray. The question, however, is not a new one in this State. It was presented in the case of *People* v. *O'Neil*, 110 Mich. 324 (33 L. R. A. 696), where it was held, Justice MONTGOMERY speaking for the court, that the statute applied to fish and game taken outside the State, and is within the police power of the State. See, also, *State* v. *Shattuck* (Minn.), 104 N. W. 719, and the cases therein cited.

Judgment is affirmed.

McALVAY, GRANT, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred with MOORE, J.

OSTRANDER, J. (*dissenting*). The record in the case of *People* v. *O'Neil* shows that on certain days named respondent, who lived in Detroit, sold in Detroit to a hotel in the same city certain brook trout and quail. Upon the trial, counsel for respondent offered to show that these articles were purchased by respondent in Chicago, and were shipped from that point to Detroit as articles of food. The testimony was excluded, as being immaterial. On the cross-examination of the respondent witness, he was asked if he knew where the trout were caught or the quail killed, and replied that he did not. In this court, it was contended that if the statute in question there was applicable to the case made by the facts, it operated as a regulation of interstate commerce. It was held that—

"It is competent for the legislature, for the purpose of protecting game or fish, to absolutely prohibit the sale of

game or fish caught within the limits of the State during a closed season or during the entire year. The question of the right to prohibit the importation and sale of game or fish, with the same purpose, is discussed and the right affirmed in *Ex parte Maier*, 103 Cal. 476, and the right is also assumed in numerous of the other cases referred to.

"We think the statute is valid, and that the convictions should be sustained, and the court below directed to proceed to judgment."

In *Ex parte Maier*, referred to (103 Cal. 476), the application of the statute to a case of selling imported game was upheld, upon the express ground that—

"Petitioner imported the meat into the State, broke the original package, and put the commodity upon the market. It thereupon became property strictly subject to State regulation and control, and falls within the denunciation of the statute. Whether petitioner could have sold the meat as an entire carcass is a question which does not confront us, and which it is not, therefore, necessary to determine."

In most of the cases involving the application of State statutes passed to protect fish and game, the legislation has been sustained upon the ground that the State was the common owner of game and fish, and that such common ownership imparted the right to keep the property, if the State chose so to do, within the jurisdiction for every purpose, to prohibit killing, transportation, possession, and, generally, to fix the conditions under which any use of or traffic in game might be carried on. It is doubtful if a broader ground can be asserted. In *Geer* v. *Connecticut*, 161 U. S. 519, a case in the decision of which two justices dissented and two did not sit, in which a statute of Connecticut was under consideration, it was said that all ownership of game killed within the State came under the condition imposed that it should not be exported, and confined commerce in such game to internal commerce, and the cases of *State* v. *Saunders*, 19 Kan. 127, and *Territory* v. *Evans*, 2 Idaho, 658, in each of which it was held that a State law prohibiting the shipment outside the State of game killed in the

State violated the interstate commerce clause of the Constitution of the United States, are criticised as not recognizing the fundamental distinction between qualified ownership of game and the perfect ownership in other property, and overlooking the authority of the State over game killed within the confines of the State, and the power of the State to follow such property into whatever hands it might pass, with conditions and restrictions deemed necessary for the public interest. In the case of *Bowman* v. *Railway Co.*, 125 U. S. 465, in which certain legislation of the State of Iowa was considered, it was said:

"It is not a restriction which only operates upon property after it has become mingled with, and forms a part of, the mass of the property within the State. * * * But the right to prohibit sales, so far as conceded to the States, arises only after the act of transportation has terminated, because the sales which the State may forbid are of things within its jurisdiction."

It is manifest that State ownership of game and fish is limited to the confines of the State, as is also the operation of all statutes, police or other. Any regulation which operates upon the right of a citizen of the State to possess or to dispose of game killed in another State must rest for its enforcement upon the proposition that unless enforced other regulations will be rendered nugatory.

If we hold that the statute in question applies to cases of possession of prohibited fish by a citizen, such fish being intended for sale or for use, or having been caught, killed, sold, or used, within the State, so that the operation of the statute bears some relation to the theory upon which such legislation is alone sustained as valid, and the statute remains in effect as it is in form a police regulation, we have gone as far as the decision in *People* v. *O'Neil*, or in any similar case will warrant us in going. Such a ruling sustains the theory of the qualified property of the citizen in game and fish, and, also, the power of the State to subject its citizens to regulations calculated to

make effectual the conditions of private ownership imposed by the legislature. In the case before us, the admitted facts negative the killing of the fish within the State, and negative their introduction into the State, or their possession within it, for sale or use therein. This is otherwise to say that the facts negative any infraction of the law, even when it is construed in harmony with grounds thus broadly asserted. It is admitted that the fish were lawfully caught, and were by the respondent lawfully purchased in a foreign country, with the purpose to ship them, according to the terms of a contract for their sale already made, to citizens of Massachusetts, and that the identical fish, and no others, when seized at Port Huron, had been, so far as Federal regulations are concerned, lawfully imported into the United States, and were actually in transit to the point of their original destination in Massachusetts and to the persons to whom they had been sold, in the possession of a common carrier. The construction which must be given the statute, in order to sustain the conviction of respondent, is that it prohibits a citizen of Michigan from contracting to sell citizens of Massachusetts fish to be purchased in Canada and from completing such a contract, when made, by transporting the fish through Michigan on their way from Canada to Massachusetts. It does not seem to me that the decision in *People* v. *O'Neil* is authority for such a construction. If it is not, we should hold, I think, that the statute was intended to have no application to facts like those in the case at bar, and that the conviction should be set aside and respondent discharged.

CARPENTER, C. J., took no part in the decision.