ATTORNEY GENERAL, *ex rel.* BEADLE, *v.* ARNOTT.

1. TAXATION — CORPORATIONS—SPECIFIC TAXES — BASIS — CAPITAL STOCK—POWER OF LEGISLATURE.

   It is competent for the legislature to fix the amount of the authorized capital stock of a corporation as the basis of computation of a specific tax under section 10, article 14, of the Constitution.

2. CONSTITUTIONAL LAW—CLASS LEGISLATION—STATUTES LOCALLY APPLICABLE.

   Act No. 39, Pub. Acts 1883, as amended, providing for the organization of corporations to develop the water power of St. Mary's river and conferring upon them certain privileges not enjoyed by other water power companies in the State, is not class legislation, though only locally applicable.

3. SAME—LEGISLATIVE POWER—DELEGATION—GENERAL OR SPECIFIC TAX—PRIVILEGE TO ELECT.

   Section 14, Act No. 231, Pub. Acts 1899, conferring upon corporations organized under the act of which it is amendatory the privilege of electing each year whether they will pay a certain specific tax or submit to local taxation under the general law, is not invalid as a delegation of legislative power to the corporations.

4. STATUTES—SUBJECT AND TITLE—VALIDITY.

   The title of Act No. 231, Pub. Acts 1899, disclosing a purpose to amend an act the title of which is set out in full, is broad enough to support section 14 therein, amending a similar section in the original act prescribing the manner of taxing corporations organized under the original act.

Certiorari to Chippewa; Steere, J. Submitted June 26, 1906. (Calendar No. 21,772.) Decided July 23, 1906.

Mandamus by John E. Bird, attorney general, on the relation of Charles S. Beadle, to compel John F. Arnott, city assessor, and the board of review of the city of Sault Ste. Marie, to place certain corporate property upon the tax roll. There was an order denying the writ, and relator brings certiorari. Affirmed.

*Sharpe & Handy*, for relator.

*John W. Shine*, City Attorney, *Oren, Webster & Carleton* and *Shaw, Warren, Cady & Oakes* (*Benton Hanchett*, of counsel), for respondents.

HOOKER, J.   The attorney general applied to the circuit court for a mandamus to compel the local assessor at Sault Ste. Marie to assess the property of the Michigan Lake Superior Power Company, situated in that city, upon the same basis as other property.   The writ was denied upon the hearing, and the relator has brought the proceeding to this court by certiorari.   The right of the relator to such an order depends upon the construction or validity of the law under which said power company was organized, viz., Act No. 39, Pub. Acts 1883, as amended by Act No. 93, Pub. Acts 1887, and Act No. 231, Pub. Acts 1899, said company being organized after the latter amendment took effect.   It seems to be conceded that these are general acts.   Section 14 of the act of 1883 provided that every company organized under the act should pay to the State treasurer an annual tax, at the rate of 1 per cent., upon its capital stock, in lieu of all other taxes.   In 1887, section 14 was amended, so that it and the act as so amended contained no reference whatever to the subject of taxes. In 1899 the provision was again amended, providing that:

"SEC. 14.   Upon giving notice to the auditor general of this State and assessing officer of the township or city in which said water power is situated, on or before the second Monday in April of any year, of the election of the company to pay specific taxes as provided in this section, each and every company organized under the provisions of this act, may pay to the treasurer of the State of Michigan, an annual tax of one per cent. on the whole amount of the authorized capital stock of such company, which tax shall be paid on or before the first Monday in July of each year and which shall be in lieu of all other general taxes upon the lands upon which said watercourse shall be located, and which shall be appurtenant thereto and the improvements thereon."

145 MICH.—27.

Acting under this statute, the company has, since 1899, paid the specific tax provided for therein, filing an election each year, and claims that right for the present year. No question appears to arise over compliance with the terms of the statute as to notice. Said section 14 is said to be unconstitutional for the following reasons, viz.:

"1. Because it violates section 11 of article 14 of the Constitution of the State of Michigan, in that it attempts to provide for a rule of taxation in the State which is not uniform.

"2. Because it violates section 12 of article 14 of the Constitution of the State of Michigan, which provides that 'All assessments hereafter authorized shall be on property at its cash value.'

"3. Because it purports to authorize corporations, incorporated thereunder, to elect each year whether they will pay specific taxes or ad valorem taxes, and because it attempts to delegate the legislative power of taxation to a private corporation.

"4. Because it violates section 20 of article 4 of the State Constitution, which provides that 'No law shall embrace more than one object, which shall be expressed in its title.'

"5. Because it grants special privileges to a private corporation in the matter of taxation, which are not enjoyed by other similar corporations.

"6. Because it grants special privileges to a private corporation as to the taxation of its property, which are not enjoyed by other property owners in the same locality."

Three important questions are presented by this case:

(1) May the legislature fix the amount of the authorized capital stock of a corporation, as the basis of computation of a specific tax?

(2) Is the statute in question class legislation?

(3) Does it attempt to delegate legislative powers upon a private corporation?

1. Section 10, art. 14, of the Constitution, provides:

"SEC. 10. The State may continue to collect all specific taxes accruing to the treasury under existing laws. The legislature may provide for the collection of specific taxes from corporations. The legislature may provide for the

assessment of the property of corporations at its true cash value by a State board of assessors and for the levying and collection of taxes thereon. All taxes hereafter levied on the property of such classes of corporations as are paying specific taxes under laws in force on November 6th, A. D. 1900, shall be applied as provided for specific State taxes in section one of this article."

The subject of specific taxes was discussed in *Pingree* v. *Auditor General*, 120 Mich. 102 (44 L. R. A. 679). It seems to be settled that a law imposing a specific tax upon an amount equaling the actual capital stock of a corporation is valid, and one reason urged for saying that such a tax based on authorized capital stock is unconstitutional, is that it is an uncertain basis, and one that may be changed at the will of the corporation taxed by reduction. The original act, No. 39, Pub. Acts 1883, requires the articles of association of such companies to state the amount of the capital stock, and the number of shares. Counsel seem to agree that this is what is meant by the term "authorized capital stock" and at first thought it would appear that this is a favorable provision from the standpoint of the State, for it taxes the entire capital stock, whether all has been called or not (see Act No. 39, Pub. Acts 1883, § 8, which provides how stock shall be paid), instead of the amount of capital actually invested, as provided in many of the laws referred to in *Pingree* v. *Auditor General*, supra. Neither provision is free from criticism, for if, as is suggested, the authorized capital may be less than the amount actually invested, so may be the actual capital, become so by reason of accumulated earnings allowed to remain in the business, while, on the other hand, the value of the holdings may, in either case, be much below the statutory amount upon which the tax is to be levied. Either actual or authorized capital furnishes a certain standard under the rule stated in the authorities mentioned, and a no more arbitrary one than any other similar standard of measure, and perhaps a standard no more subject to fraudulent evasion and con-

cealment than any other. In the judgment of the legislature this was a proper standard, and we cannot say that it is not, merely because we may think that it is not entirely effective to prevent fraudulent underassessment. There are few tax laws that would stand such a test. If the law shall prove ineffective, the legislature has the power to change it.

2. Is this statute class legislation? It is admitted that this is a public act, and that other companies may be, if they have not been, organized under this act, although the act is said to be in a way local, in that it authorizes the use of water from Lake Superior or the St. Mary's river, and does not authorize the diversion of any other water. We cannot determine that this act was passed in the sole interest of this respondent and its projectors, or that no other canal is feasible to use water from Lake Superior, or that no canal can be constructed elsewhere than in Chippewa county under it. Nor can we say that because other statutes providing for the formation of companies to construct canals in other counties, do not confer the same privilege of a special tax, that this act is class legislation, and void. We have many laws local in character, such as laws pertaining to the taking of fish, the running and booming logs, etc. The Upper Peninsula has long been exceptional in the matter of railroad rates, and the compensation of its judiciary. See, also, *Valentine, ex rel. Dudley*, v. *Water-Power Co.*, 128 Mich. 280.

3. Delegation of legislative power. The only reference to taxes in this act is in section 14 hereinbefore quoted. It authorizes the payment of a definite specific tax, but this is plainly designed as a concession to the companies, a privilege which they may accept, or omit to take the advantage of. If a company omit to signify its acceptance of this privilege, it is inferable that it would be subject to the usual ad valorem taxation. We have no doubt of the power of the legislature to impose a specific tax, or to subject the property to an ad valorem tax, in case of a

failure to pay the specific tax seasonably. It may be said that this is substantially what has been done. But whether that is technically so, or it is more accurate to say that the ad valorem tax is imposed, but subject to a right to pay a specific tax instead, it is undeniable that the law gives an option or election to the respective companies to pay specific or ad valorem taxes, as they may choose, upon compliance with the terms of the act. Many cases hold that this is not a delegation of legislative power, but the mere imposition of a condition, upon the effect to be given to the law. In Cooley on Constitutional Limitations (7th Ed.), p. 164, it is said:

"But it is not always essential that a legislative act should be a completed statute which must in any event take effect as law at the time it leaves the hands of the legislative department. A statute may be conditional, and its taking effect may be made to depend upon some subsequent event. Affirmative legislation may in some cases be adopted, of which the parties interested are at liberty to avail themselves or not at their option. A private act of incorporation cannot be forced upon the corporators; they may refuse the franchise if they so choose. In these cases the legislative act is regarded as complete when it has passed through the constitutional formalities necessary to perfected legislation, notwithstanding its actually going into operation as law may depend upon its subsequent acceptance."

As supporting this doctrine the learned author cites *Smith* v. *City of Janesville*, 26 Wis. 291, where it is said:

"No one doubts the general power of the legislature to make such regulations and conditions as it pleases with regard to the taking effect or operation of laws. They may be absolute or conditional and contingent; and, if the latter, they may take effect on the happening of any event which is future and uncertain. Instances of this kind of legislation are not infrequent."

Mr. Justice Field said, in *Blanding* v. *Burr*, 13 Cal. 343:

"Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the legislature, in its wisdom, may impose. They may take effect only upon the happening of events which are future and uncertain; and among others, the voluntary act of the parties upon whom they are designed to operate. They are not the less perfect and complete when passed by the legislature, though future and contingent events may determine whether or not they shall ever take effect."

In *Locke's Appeal,* 72 Pa. 491, 498, it was said:

"To assert that a law is less than a law because it is made to depend on a future event or act is to rob the legislature of the power to act wisely for the public welfare. * * * Then, the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend."

See *People* v. *Fire Ass'n,* 92 N. Y. 311. The Federal Supreme Court considered the question in *Field* v. *Clark,* 143 U. S. 649, and while recognizing the want of authority in Congress to delegate legislative power to the President, held it proper to confide to him a discretion as to the duration of a suspension of a law.

Again, in *Northern Pacific R. Co.* v. *Clark,* 153 U. S. 252, in a case similar to the present, Mr. Justice Jackson said:

"This act is by its terms nothing but a tax law, and while it adopted the same rule of percentages on the gross earnings as is provided in the act of 1883, it differed from that act in not being compulsory upon the railroad companies, for it left to them the election as to which of two modes of taxation they should accept or submit to. It practically gave to the railroad companies the choice of having their property taxed as other property in the Territory, by assessment and levy, or of taking the benefits of the act upon the terms and conditions provided therein. It was, by section 7, made a condition of the acceptance of the act that 'any railroad company assessed under chapter 99 of the laws of 1883 shall, within 30 days after the passage of this act, pay into the territorial treasury the

full amount of the taxes and interest due under the assessments under said laws of 1883, including taxes on both territorial and interstate earnings, before they can avail themselves of the provisions of this act.' It was further provided that any company failing to strictly comply with the provisions of the act within the time provided should be immediately subject to assessment and taxation upon its property in the same manner as the property of individuals was assessed and taxed."

This is substantially the same as this case, for a failure to elect makes the company liable to ad valorem tax. The law was held valid. See, also, *Merchants', etc., Bank* v. *Pennsylvania*, 167 U. S. 461.

The case of *Citizens' Sav. Bank* v. *Owensboro*, 173 U. S. 636, sustains a Kentucky statute, giving an option to banks to elect between different methods of taxation. Our own case of *King* v. *Insurance Co.*, 140 Mich. 258, discusses this subject and cites many of the authorities mentioned, and while the act considered in that case was held unconstitutional, the distinction is plain. We are of the opinion that the law did not delegate legislative power.

We think that the act is not void by reason of a defective title. It is within the following cases, as properly within the original title: *Holden* v. *Board of Sup'rs of Osceola Co.*, 77 Mich. 202; *City of Detroit* v. *Wayne Circuit Judge*, 112 Mich. 317; *Common Council of Detroit* v. *Schmid*, 128 Mich. 379; *Board of Sup'rs of Chippewa Co.* v. *Auditor General*, 65 Mich. 408; *Fort Street Union Depot* v. *Commissioner of Railroads*, 118 Mich. 340; *National Loan & Investment Co.* v. *City of Detroit*, 136 Mich. 451.

It is only necessary to add that the order of the circuit court is affirmed.

CARPENTER, C. J., and McALVAY, GRANT, BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.