PEOPLE *v.* SETUNSKY.

1. CONSTITUTIONAL LAW—FISH LAWS—CLASS LEGISLATION.
Act No. 153, Pub. Acts 1907, licensing the use of power boats for commercial fishing and providing for their registration, is not class legislation, since it grants all citizens equal rights to fish in accordance with its regulations, and binds all by its restrictions.

2. SAME—LEGISLATIVE AUTHORITY.
The legislature has power to regulate the taking of fish and game in the waters of the State, as to time, place, and manner.[1]

3. SAME—NONRESIDENTS.
The State may exclude nonresidents from fishing privileges in its waters.

4. SAME.
The regulation of taking game and fish within the State is not an interference with interstate commerce.

5. SAME—STATUTES—CONSTRUCTION.
The statute regulates fishing, not merely the use of boats.

[1] As to public regulation of right to fish, see note to *People* v. *Truckee Lumber Co.* (Cal.), 39 L. R. A. 581.

Exceptions before judgment from Menominee; Cooper, J., presiding. Submitted April 22, 1910. (Docket No. 142.) Decided June 6, 1910.

Louis Setunsky was convicted of illegal fishing. Affirmed.

*George Barstow*, for appellant.

*John E. Bird*, Attorney General, and *George S. Law*, Assistant Attorney General, for the people.

Hooker, J. Defendant was convicted on his plea of guilty of a violation of the fish law, and appealed to the circuit court. He was permitted to withdraw his plea of guilty, and interpose the plea of not guilty, and the trial proceeded as follows:

"And to maintain and prove the issue on their part, the people of the State of Michigan offered in evidence a certain stipulation which was received in evidence, and a copy of which is as follows:

"'State of Michigan.
"'The Circuit Court for the County of Menominee.
"'The People of the State of Michigan,
                v.
"'Louis Setunsky, Defendant.
                "'Stipulation.
"'It is hereby stipulated and agreed by and between Michael J. Doyle, prosecuting attorney in and for the county of Menominee, and George Barstow, attorney for the defendant, and the said defendant; that the defendant, Louis Setunsky, on the 15th day of June, 1909, was engaged in commercial pound net fishing on waters bordering on this State, and for the purpose of catching fish to be offered for sale without having procured the license required by Act No. 153 of the Public Acts of Michigan of the year 1907; that the said Louis Setunsky at the aforesaid time in Menominee county was using a boat propelled by a gasoline engine, and a fishing outfit purchased and used for two years before the passage of aforesaid act; and that the manner of catching fish in pound nets or the amount that may be caught in said nets is not affected nor regu-

lated by the fact as to whether a sail or gasoline boat is used in operating said nets.

" 'MICHAEL J. DOYLE,
" ' Prosecuting Attorney in and for Menominee County, Mich.
" ' GEORGE BARSTOW,
" ' Attorney for Defendant.
" ' LOUIS SETUNSKY,
" ' Defendant.

" ' Dated Nov. 30th, 1909.

" ' The right to a trial by jury in above cause is hereby expressly waived in open court.

" ' LOUIS SETUNSKY,
" ' Defendant.'

"Whereupon, the issue so joined as aforesaid was submitted to the said court for decision; and thereupon the said court found the respondent guilty as alleged in complaint and warrant in this cause, to which finding the respondent then and there duly excepted and presented to the court the following reasons of exception to said finding: To wit, because Act No. 153 of the Public Acts of Michigan of the year 1907, of which the respondent was found guilty of violating, is unconstitutional and void upon the following grounds:

"(1) Because it is class legislation, conferring a special privilege and benefit on that class of commercial fishermen who are the owners and users of sailboats as against that class of commercial fishermen who are the owners and users of gasoline boats. And in no wise a charge by the State in accordance with the manner of catching fish, the place where taken, or the amount that may be caught.

"(2) Because it imposes a license and tax on boats contrary to the provisions of the Ordinance of 1787 and not within the police powers of the State."

The case is before us on exceptions before sentence. The act, for the violation of which the defendant stands convicted, is No. 153, Pub. Acts 1907, and we quote a synopsis of it from his brief:

" The act is one entitled 'An act to regulate and license fishing with tugs, launches, or boats, in the waters bordering on this State.'

" The first section reads:

" 'SECTION 1. It shall be unlawful to use for the purpose of commercial fishing, or for the purpose of catching fish to be offered for sale, in any of the waters bordering on this State, any kind of a boat, tug or launch, except rowboat, without such boat, tug or

launch shall be registered in the office of the State game and fish warden, and a license issued therefor.'

" Section 2 provides the manner of making application for license and to whom to be made.

" Section 3 reads:

" ' SEC. 3. It shall be the duty of the State game and fish warden, when application is made by any person, firm, company, copartnership, partnership association or corporation, to issue licenses provided for in this act upon payment by the applicant, if a resident of this State, of the following fees: For each steam tug, steamboat or steam launch, without a steam lifter, ten dollars per year; for each steam tug, steamboat or steam launch or other boat with a steam lifter, twenty-five dollars per year; for any other boat, launch or tug propelled with any other power, except rowboats and sailboats, ten dollars a year each; for each sailboat, one dollar per year: *Provided,* That nonresidents of this State shall pay the following fees: For each steam tug, steamboat or steam launch, without a steam lifter, one hundred dollars a year; for each steam tug, steamboat, steam launch, or other boat with a steam lifter, two hundred dollars a year; for any other boat, launch or tug propelled with any other power, except rowboats and sailboats, fifty dollars a year each; for each sailboat, two dollars per year: *Provided further,* That for the purposes of this act, any firm, company, copartnership, partnership association or corporation, in which less than fifty-one per cent. of their stock is actually owned by residents of this State, shall be considered nonresidents.'

" Section 4 provides what the license shall set forth.

" Section 5 reads:

" ' SEC. 5. All boat licenses shall expire on the first day of April following their issue. The State game and fish warden shall keep a record of all applications and licenses. On the first day of each month, the State game and fish warden shall pay over to the State treasurer all moneys received by him under the provisions of this act, and said moneys shall be credited to the State game and fish warden's fund and be disbursed in accordance with the law for the enforcement of the statutes regulating and protecting the commercial fishing interests.'

" Section 6 provides that this act shall not be deemed as authorizing the use of illegal nets, etc.

" Section 7 provides penalty for violation.

" It was stipulated on the part of the people as follows:

" ' That the manner of catching fish in pound nets or the amount

that may be caught in said nets is not affected nor regulated by the fact as to whether a sail or gasoline boat is used in operating said nets.'"

The errors are based on the claim:

"(1) Because it is class legislation, conferring a special privilege and benefit on that class of commercial fishermen who are the owners and users of sailboats as against that class of commercial fishermen who are the owners and users of gasoline boats. And in no wise a charge by the State in accordance with the manner of catching fish, the place where taken, or the amount that may be caught.

"(2) Because it imposes a license and tax on boats contrary to the provisions of the Ordinance of 1787 and not within the police powers of the State."

1. Class Legislation. This cannot be held to be class legislation, for the reason that all citizens of this State have equal rights to fish in accordance with the rule prescribed, and all are bound by its restrictions. *People* v. *Smith*, 108 Mich. 527 (66 N. W. 382, 32 L. R. A. 853, 62 Am. St. Rep. 715); *O'Connell* v. *Lumber Co.*, 113 Mich. 124 (71 N. W. 449); *People* v. *Japinga*, 115 Mich. 222 (73 N. W. 111); *U. S. Heater Co.* v. *Iron Molders Union*, 129 Mich. 354 (88 N. W. 889); *People* v. *De Blaay*, 137 Mich. 402 (100 N. W. 598); *Beadle* v. *Arnott*, 145 Mich. 416 (108 N. W. 646); *Maclam* v. *City of Marquette*, 148 Mich. 480 (111 N. W. 1079). The doubt expressed in *Stuart* v. *Greanyea*, 154 Mich. 134 (117 N. W. 655), may well have been based on the exclusion of all citizens from certain public waters, except the owner of adjacent land—thereby conferring special privileges upon a small class. It is not claimed, however, that this expression of doubt was even a *dictum*.

That the legislature has power to regulate the taking of fish and game within the confines of the State, and the waters that it owns, is unquestionable, not only as to time and place, but as to method. It is upheld by the decisions of the Federal and State courts generally, and has been so held in this State. The following authorities are cited in

the brief of the attorney general: *Geer* v. *Connecticut,*
161 U. S. 519 (16 Sup. Ct. 600); *State* v. *Corson,* 67 N.
J. Law 178 (50 Atl. 780); *Commonwealth* v. *Hilton,*
174 Mass. 29 (54 N. E. 362, 45 L. R. A. 475); *State* v.
*Gallop,* 126 N. C. 979, 983 (35 S. E. 180); *Morgan* v.
*Commonwealth,* 98 Va. 812 (35 S. E. 448); 19 Cyc. pp.
1006, 1012, 1019; *People* v. *Collison,* 85 Mich. 105 (48
N. W. 292); *People* v. *Horling,* 137 Mich. 406, 414 (100
N. W. 691). It goes without saying that it has no author-
ity over the waters of other States, and this law has no
application to such. The game laws are in point. It is
common knowledge that legislatures elsewhere as well as
in this State prescribe closed seasons for shooting as well as
fishing, and limit the quantity that a person may kill or
catch, enforce licenses, and impose penalties for infrac-
tions of the laws. *Osborn* v. *Charlevoix Circuit Judge,*
114 Mich. 655 (72 N. W. 982); *People* v. *Kirsch,* 67 Mich.
539 (35 N. W. 157); *People* v. *Dornbos,* 127 Mich. 136
(86 N. W. 529); *People* v. *Lassen,* 142 Mich. 597 (106 N.
W. 143); *In re Yell,* 107 Mich. 228 (65 N. W. 97).

The right of the State to exclude nonresidents alto-
gether from fishing privileges in its waters is recognized
by the following cases: *McCready* v. *Virginia,* 94 U. S.
395; *Geer* v. *Connecticut,* 161 U. S. 519 (16 Sup. Ct.
600); *Blake* v. *McClung,* 172 U. S. 239 (19 Sup. Ct. 165).

We have held that the regulation of the taking of game
and fish within our territory is not an interference with
interstate commerce. *People* v. *O'Neil,* 110 Mich. 324
(68 N. W. 227, 33 L. R. A. 696); *People* v. *Lassen,*
*supra.* See, also, *State* v. *Corson* and *Geer* v. *Con-*
*necticut, supra.*

It is urged that this act is a regulation of the use of
boats and not a regulation of fishing. We cannot accede
to this contention. It is only when boats are used in the
fishing that a discrimination is made between them, and
it was doubtless based on facility of operation and in-
creased capacity, which bear directly upon the amount of
work done and fish likely to be caught. Counsel say that

it is possible to take as many fish in a rowboat as in a sailing vessel or steamer. This position is hardly tenable; certainly it is not true in practice, as a general rule. We find no error, and the conviction is affirmed.

OSTRANDER, MOORE, BLAIR, and STONE, JJ., concurred.