Strafford,
No. 4283.

MARITIME PACKERS, LTD. & a.

*v.*

RALPH G. CARPENTER, & a.

Argued March 5, 1954.

Decided May 19, 1954.

74

*Charles F. Hartnett* (by brief and orally), for the plaintiffs.

*Louis C. Wyman,* Attorney General and *Warren E. Waters,* Deputy Attorney General (*Mr. Waters* orally), for the defendants.

GOODNOW, J.  The lobster tails packed in Canada and shipped

into this state in metal cans by the plaintiff, Maritime Packers, Ltd., and sold and offered for sale here by the plaintiff, Roussel, do not meet the requirements of R. L., c. 245, s. 47, as amended by Laws 1950, c. 12, s. 8 which make it unlawful to ship, transport, carry, buy, give away, sell or expose for sale "lobster meat after the same shall have been taken from the shell without the tail meat being whole and intact, and of a length of less than four and one-quarter inches when laid out straight and measured from end to end." While the language of this section is not artfully phrased it is clear that its obvious purpose is to prohibit the sale of meat from lobsters, the tail meat of which is less than four and one-quarter inches in length. Section 47b (Laws 1951, c. 231, s. 1) provides that "No person, firm or corporation shall transport, possess or offer for sale lobster meat from sources outside the jurisdiction of this state unless such meat shall comply with section 47 of this chapter. The inclusion of any such meat of less than the prescribed legal length within any container, package, receptacle or tray shall subject all such meat . . . to be forfeited and the possessor of such meat shall be subject to the penalty imposed for violation of section 47."

It appears significant to us that in its first adoption of section 47b (Laws 1951, c. 200, s. 3), the Legislature made lobster meat from sources outside the jurisdiction of this state subject to the minimum length requirements of section 47 in the language quoted above but added a provision which excluded from the operation of the statute any "lobster meat processed outside the jurisdiction of this state and shipped directly in interstate or foreign commerce to a person . . . duly licensed to sell said lobster meat within this state." Twenty-eight days after this first adoption of section 47b, the 1951 Legislature amended the section (Laws 1951, c. 231, s. 1) to eliminate this exclusion but leave intact the requirement that lobster meat from sources outside the jurisdiction of this state comply with the minimum length provisions of section 47 and the provisions concerning forfeiture and prosecution if meat of less than the prescribed length is included in any container.

The purpose of the language used in section 47b as finally adopted (Laws 1951, c. 231, s. 1) is too plain to admit of more than one meaning. *Trustees &c. Academy* v. *Exeter*, 92 N. H. 473, 478. The rule that statutory language is to be read to avoid unconstitutional results is not applicable where it is not susceptible

of such a reading. *Opinion of the Justices,* 88 N. H. 511, 512. Furthermore, the circumstance of the statute's amendment clearly declares the present policy of the State to be to prohibit the transportation, possession or offering for sale of lobster meat the tail meat of which is less than four and one-quarter inches in length, whether secured from sources within or outside the jurisdiction of this state and however packaged.

The answer to the first question is in the affirmative.

The first legislation establishing a legal minimum length for lobsters was adopted in this state in 1874 and was entitled an "Act for the better protection of lobsters in the waters of New Hampshire." Laws 1874, *c.* 5, *s.* 1. The length provisions of this statute and the subsequent amendments to it applied only to the shell of the lobster until 1937 when provisions concerning lobster meat after its removal from the shell were added to those prescribing the legal shell length. These provisions required that the tail meat be kept whole and intact and of a certain minimum length. Laws 1937, *c.* 168, *s.* 33b. Since then, the requirements as to the legal length of lobster, both before and after the removal of the meat from the shell, have been contained in one section of the statutes and now appears in R. L., *c.* 245, *s.* 47, as amended by Laws 1950, *c.* 12, *s.* 8. It is apparent that the minimum length standards established by section 47 were adopted with a view to protecting the lobster supply of this state. The right of the State to exercise its police power in the accomplishment of such a purpose cannot be doubted. *State* v. *Dow,* 70 N. H. 286, 287; *Silz* v. *Hesterberg,* 211 U. S. 31, 39; *Bayside Fish Co.* v. *Gentry,* 297 U. S. 422, 426.

On the basis of the Trial Court's finding that lobsters do not migrate and its observation that "no evidence was offered that said sections are an aid to conservation of lobsters in New Hampshire waters," the plaintiffs contend that in enacting section 47b (Laws 1951, *c.* 231, *s.* 1), whereby lobster meat from sources outside the jurisdiction of this state was first required to comply with the provisions of section 47 when brought into this state, the 1951 Legislature sought the accomplishment of some purpose other than the protection of this State's lobster supply. With this contention we cannot agree. It is apparent from the record in this case that the appearance of lobster meat furnishes no indication of the waters from which the lobster has been taken. Under such circumstances, a requirement applicable to all lobsters or any

other specie of fish within a state, whatever their source, has long been a recognized means of regulating the supply in local waters. *Commonwealth* v. *Savage*, 155 Mass. 278, 279; *People* v. *Lassen*, 142 Mich. 597, 599; *Bayside Fish Co.* v. *Gentry*, 297 U. S. 422, 426. The plain purpose of section 47b, in extending the application of the minimum length requirements of section 47 to include all lobster meat within the state, is the protection of the supply of lobsters in the waters of this state. Such a provision "operates as a shield against the covert depletion of the local supply, and thus tends to effectuate the policy of the law by rendering evasion of it less easy." *Bayside Fish Co.* v. *Gentry, supra*, 426.

The plaintiffs, however, insist that there is no legal justification for the imposition of the requirements of section 47 upon Canadian lobster meat when packaged in metal cans such as were used in this case and that the statute, if deemed to apply to such meat, is an unreasonable exercise of the police power of the State and unconstitutional. It is not disputed that legislation enacted for the purpose of protecting the lobster supply in the waters of this state, as is the legislation here in question, is directed to "the benefit and welfare of this state" (N. H. Const., *Pt.* II, *Art.* 5) and is a proper subject for the exercise of the police power. Such legislation "will not be declared unconstitutional merely because it restricts some of the rights secured to individuals . . . [but] only when the restrictions thus imposed are found to be unreasonable." *Dederick* v. *Smith*, 88 N. H. 63, 68. The chief issue raised by the plaintiffs is whether the statute "may be found to be of reasonable service towards accomplishing the object sought to be attained." *State* v. *Dickstein*, 89 N. H. 546, 547; *Richardson* v. *Beattie*, 98 N. H. 71, 77. They contend that the statute is invalid as to them because there is no reasonable connection between the imposition of minimum length requirements on lobster meat from without the state as packaged by them and the enforcement of those requirements as to lobsters from local waters.

We cannot agree with the plaintiffs' supporting argument that the sale of lobster meat from Nova Scotia which is packaged in metal cans, with transparent or metal covers, bearing labels indicating the source of the meat would raise no reasonable possibility of the sale of meat of local lobsters in similar containers under the claim that it was taken outside of New Hampshire waters. Cans of the type used by the plaintiffs are not peculiarly available to them. In the can, the meat of lobster taken from waters within

the jurisdiction of this state and that of lobsters taken from without are indistinguishable. It is solely through the label on the can that the source of the plaintiffs' meat is identified. The fact that they choose to disclose this information in this manner imposes no requirement upon others to do so. It seems clear to us that the application of the provisions of section .47 to all lobster meat within the state, whatever its source and whether packaged or otherwise, bears directly upon the enforcement of those requirements designed to protect the local supply. *Silz* v. *Hesterberg,* 211 U. S. 31, 40.

The only restriction which the statute places upon the plaintiffs in this state concerns the meat of lobsters the tail meat of which is less than four and one-quarter inches in length. The acquisition and possession of such meat without this state is not affected nor are the plaintiffs prevented from handling and selling meat within · this state which complies with the minimum length requirements. The statute is not discriminatory but simply requires that when the meat of lobsters which have been taken from waters outside this state is brought into this state, it shall comply with the same minimum standards prescribed for meat of lobsters taken from the waters of this state. See *State* v. *Dow,* 70 N. H. 286, 287, 288. While the quantity of Canadian lobster meat sold in this state in 1952 in violation of the law is not an insignificant factor to the plaintiffs, it cannot be said to be sufficient to foreclose the exercise by the State of its police power in the protection of its own considerable lobster supply.

In balancing the importance of the public benefit which the statute seeks to promote against the seriousness of the restriction which it imposes upon the plaintiffs' rights, we conclude that the statute is unobjectionable as an exercise of the police power of the State. *Richardson* v. *Beattie,* 98 N. H. 71, 75, 76. *Dederick* v. *Smith,* 88 N. H. 63, 68. The fact that legislation requiring that all packaged meat be labeled to indicate its source and providing for some method of inspection might achieve the same result involves the expediency of the means adopted to secure enforcement in aid of the local lobster supply and is a matter for the Legislature's determination. *Chronicle &c. Pub. Co.* v. *Attorney General,* 94 N. H. 148, 151.

We find nothing in the statute to suggest any purpose to interfere with interstate or foreign commerce. As pointed out earlier in this opinion, its sole object is the protection of the lobster supply in

the waters of this state. That its enforcement will affect foreign and interstate commerce cannot be doubted but "that result is purely incidental, indirect and beyond the purposes of the legislation. The provisions of the act assailed are well within the police power of the state." *Bayside Fish Co.* v. *Gentry,* 297 U. S. 422, 426; *Eubanks* v. *Tucker,* 54 F. Supp. 1001; *People* v. *Lassen,* 142 Mich. 597; Anno. 92 A. L. R. 1266, 1267.

Nor does it appear to us that the legislation in question violates any provisions of the trade agreements made between the United States and Canada which have been called to our attention in various Treasury decisions. T. D. 48033, 68 T. D. 795 and T. D. 51802, 82 T. D. 305. The principal provisions of these agreements, so far as this case is concerned, require that the United States accord to Canadian products treatment "no less favorable than that accorded to like products of national origin in respect of all . . . requirements affecting their internal sale" and that Canadian lobster be admitted free of any duty. If these provisions were deemed to permit the importation of Canadian lobster into this state regardless of length, as articles of commerce protected by federal laws and therefore beyond the reach of state laws declaring and regulating an internal policy, the results would be that such lobster would be accorded more favorable treatment than that granted to lobster from other states within the United States and would deprive this State of its authority to protect the supply of lobsters within its own waters. No such permission was specifically granted by these agreements and we do not believe that it was intended to be. The provisions of T. D. 51802, *supra,* relied on by the plaintiffs, which are concerned with "general elimination of quantitative restrictions" are inapplicable to the present statute.

The answer to the second question is in the negative.

*Remanded.*

All concurred.